**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ASUS TECHNOLOGY LICENSING INC. AND CELERITY IP, LLC**, <br><br> Plaintiffs, <br><br> v. <br><br> **AT&T INC., AT&T CORP., AT&T MOBILITY LLC, AT&T MOBILITY II LLC, AND AT&T SERVICES, INC.,** <br><br> Defendants. | Civil Action No. 2:23-cv-486 <br><br> **JURY TRIAL DEMANDED** |

---

## ORIGINAL COMPLAINT

---

Plaintiffs ASUS Technology Licensing Inc. ("ATL") and Celerity IP, LLC ("Celerity") (collectively, "Plaintiffs") hereby submit this Complaint for patent infringement against Defendants AT&T Inc., AT&T Corp., AT&T Mobility LLC, AT&T Mobility II LLC, and AT&T Services Inc. (collectively, "AT&T" or "Defendants") and state as follows:

### NATURE OF THE ACTION

1.      AT&T has infringed and continues to infringe, contribute to the infringement of, and/or actively induce others to infringe, U.S. Patent No. 10,951,359 ("the '359 Patent" or "Patent-In-Suit") (attached hereto as Exhibit A).  Plaintiffs thus file this Complaint seeking a judgment of and relief for patent infringement by AT&T.

### THE PARTIES

2.      Plaintiff ASUS Technology Licensing Inc. ("ATL") is Taiwanese corporation, with its principal place of business located at No. 115, Li-De Rd., Beitou District, Taipei, Taiwan,

11269942

R.O.C.  ATL was established in April 2022 by ASUSTeK Computer Inc. ("ASUSTeK") to continue ASUSTeK's long history of development in and contributions to the field of wireless communication technologies since 2000.  ATL's mission includes active development of 3G, 4G, and 5G wireless communication technologies, as well as management of an innovative patent portfolio concerning such technologies which has brought abounding contributions to the industry through standards contributions and licensing.  ATL is the owner by assignment of patents, originally owned by ASUSTeK, that are critically important to 3G, 4G, and 5G technologies. Regarding the present litigation, ATL is the owner by assignment of the Patent-In-Suit.

3.       Plaintiff Celerity IP, LLC ("Celerity") is a limited liability company organized and existing under the laws of Texas, with its principal place of business located at 7160 Dallas Parkway, Suite 235, Plano, Texas 75024.  Celerity has partnered with ATL to assist with the licensing and enforcement of ATL's patents, including in the present litigation.  Celerity is the exclusive licensee of the Patent-In-Suit.  While Celerity is the exclusive licensee of the Patent-In-Suit, patent owner ATL has agreed to join as a Plaintiff in the present litigation, including to ensure compliance with 35 U.S.C. § 281.  *See Lone Star Silicon Innovations LLC v. Nanya Technology Corp.*, 925 F.3d 1225 (Fed. Cir. 2019).

4.       Defendant AT&T Inc. is a corporation organized and existing under the laws of Delaware.  Since October 2, 1992, AT&T Inc. has been registered to do business in Texas under Texas SOS file number 0009294006.  AT&T Inc. may be served through its registered agent, CT Corporation System, located at 1999 Bryan St., Suite 900, Dallas, Texas 75201.

5.       Defendant AT&T Corp. is a corporation organized and existing under the laws of New York.  Since February 11, 1925, AT&T Corp. has been registered to do business in Texas under Texas SOS file number 0000480306.  AT&T Corp. may be served through its registered agent for service, CT Corporation System, located at 1999 Bryan St., Suite 900, Dallas, Texas 75201.  AT&T Corp. is a direct or indirect subsidiary of AT&T Inc.

6.      Defendant AT&T Mobility LLC is a limited liability company organized and existing under the laws of Delaware.  Since November 21, 2000, AT&T Mobility LLC has been registered to do business in Texas under Texas SOS file number 0707861123.  AT&T Mobility LLC may be served through its registered agent for service, CT Corporation System, located at 1999 Bryan St., Suite 900, Dallas, Texas 75201.  AT&T Mobility LLC is a direct or indirect subsidiary of AT&T Inc..

7.      Defendant AT&T Mobility II LLC is a limited liability company organized and existing under the laws of Delaware.  AT&T Mobility II LLC is identified by the Texas Secretary of State as having an "ACTIVE" right to transact business in Texas under Texas taxpayer number 18416599704, associated with the Texas mailing address 101 N. Saint Marys St., Rm. 9-Y01, San Antonio, Texas 78215-2109.  AT&T Mobility II LLC may be served through its registered agent for service, The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware, 19801. On information and belief, AT&T Mobility II LLC may also be served through AT&T Mobility LLC's registered agent for service, CT Corporation System, located at 1999 Bryan St., Suite 900, Dallas, Texas 75201.  AT&T Mobility II LLC is a direct or indirect subsidiary of AT&T Inc..

8.      Defendant AT&T Services, Inc. is a corporation organized and existing under the laws of Delaware.  Since April 5, 1996, AT&T Services, Inc. has been registered to do business in Texas under Texas SOS file number 0010935606.  AT&T Services, Inc. may be served through its registered agent for service, CT Corporation System, located at 1999 Bryan St., Suite 900, Dallas, Texas 75201.  AT&T Services, Inc. is a direct or indirect subsidiary of AT&T Inc..

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1338, as this action arises under the patent laws of the United States (35 U.S.C. §§ 1 *et seq.*).

10.     Each Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

11.     Personal jurisdiction exists generally over the Defendants because each Defendant has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum as a result of business conducted within Texas, including in the Eastern District of Texas. Personal jurisdiction also exists over each Defendant because each, directly or through subsidiaries, makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets products and/or services within Texas, including in the Eastern District of Texas, that infringe one or more claims of the Patent-in-Suit.  Further, on information and belief, Defendants have placed or contributed to placing infringing products and/or services into the stream of commerce knowing or understanding that such products and/or services would be sold and used in the United States, including in this District.  Defendants are each registered or authorized to do business in Texas and maintain an agent authorized to receive service of process within Texas.

12.     Plaintiffs maintain a place of business within the Eastern District of Texas. For example, Plaintiff Celerity is incorporated in Texas and has its principal place of business within this District located at 7160 Dallas Parkway, Suite 235, Plano, Texas 75024.

13.     Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §§ 1391(b)-(c) and/or 1400(b), including but not limited to because AT&T has committed acts of infringement in this District and has a regular and established place of business in this District.  By way of example and without limitation, AT&T makes, uses, sells, offers to sell, and/or imports products and/or services that are accused of infringing the Patent-In-Suit into and/or within this District and maintains a permanent and/or continuing presence within this District.

14.     For example, AT&T operates one or more wireless telecommunications networks, including but not limited to wireless networks doing business under the brand names "AT&T" and "Cricket Wireless" (collectively, the "AT&T Wireless Networks").  The AT&T Wireless Networks include network infrastructure and provide wireless coverage throughout the United States, including within the Eastern District of Texas.

15. AT&T also advertises in the Eastern District of Texas, including but not limited to advertising the geographic coverage of the AT&T Wireless Networks within this District.  By way of example and without limitation, AT&T's website provides a "Wireless coverage map" that advertises AT&T's current 4G and 5G wireless network coverage in and around Marshall, Texas.



*See, e.g.*, https://www.att.com/maps/wireless-coverage.html (last visited October 18, 2023).

16. AT&T also operates numerous brick and mortar retail stores in the Eastern District of Texas.  These retail stores are physically located within this District, are regular and established places of business of AT&T, and are used by AT&T to actively market and sell services for the AT&T Wireless Networks that infringe the Patent-In-Suit.  By way of example and without limitation, AT&T's website provides an "AT&T Stores Near You" feature that shows the locations of such AT&T retail stores within this District.



*See, e.g.*, https://www.att.com/stores/ (last visited October 18, 2023).

17.     By way of example and without limitation, AT&T maintains brick and mortar retail stores in this District located, among other places, in Marshall (e.g., 1712 E Grand Ave, Marshall, TX 75670), Longview (e.g., 3407 N 4th Street, Suite 107, Longview, TX 75605; 109 W Loop 281, Longview, TX 75605; and 2306 Gilmer Road, Longview, TX 75604), Tyler (e.g., 301 N Northwest Loop 323, Tyler, TX 75702; 2028 E Southeast Loop 323, Tyler, TX 75701; 4757 South Broadway Ave, Tyler, TX 75703; and 8922 S Broadway Ave, Ste 112, Tyler, TX 75703), Beaumont (e.g., 805 I10 South, Beaumont, TX 77701; and 4460 Dowlen Road, Beaumont, TX 77706), Lufkin (e.g., 1905 Tulane Dr, Suite 103b, Lufkin, TX 75901; and 500 N Brentwood Dr, Lufkin, TX 75904), Sherman (e.g., 301 East US Highway 82, Suite 1a, Sherman, TX 75092), Texarkana (e.g., 4901 N Stateline Ave, Suite 900, Texarkana, TX 75503; 5112 Summerhill Rd, Texarkana, TX 75503; and 250 Richmond Ranch Rd, Texarkana, TX 75503), Plano (e.g., 701 N Central Expy,

Ste 400, Plano, TX 75075; and 6000 N Central Expressway, Plano, TX 75074), <u>McKinney</u> (e.g., 1681 N Central Expwy, Suite 450, Mckinney, TX 75070; 1801 N Hardin Blvd, Mckinney, TX 75071; and 3050 South Central Expressway, Ste 125, Mckinney, TX 75070), and <u>Frisco</u> (e.g., 8445 Preston Road, Suite 220, Frisco, TX 75034; 12021 Dallas Pkwy, Suite 500, Frisco, TX 75034; 6635 Cowboys Way, Ste 120, Frisco, TX 75034; 3551 Preston Rd, Frisco, TX 75034; and 2601 Preston Road #2238, Frisco, TX 75034).  *See, e.g.*, https://www.att.com/stores/ (last visited October 18, 2023).

18.     AT&T also maintains a regular and established place of business in this District located at 2900 W Plano Pkwy, Plano, TX 75075, which it calls the "AT&T Foundry."  *See, e.g.*, https://about.att.com/story/2018/plano_foundry.html (last visited October 18, 2023).  Per AT&T: "At the AT&T Foundry in Plano, we've set up a new physical space encompassing all aspects of an industry environment – from manufacturing to distribution to retail. This fully integrated space showcases how AT&T's digital technology and cybersecurity capabilities can address real-world challenges. We'll collaborate with businesses to help them take advantage of existing and emerging technologies like 5G, artificial intelligence (AI), software-defined networking (SDN), and the Internet of Things (IoT) to drive their industry-specific digital transformation needs."  *Id.*   On information and belief, AT&T uses the AT&T Foundry to design, test, use, promote, and sell services for the AT&T Wireless Networks that infringe the Patent-In-Suit.

19.     AT&T also maintains a regular and established place of business in this District that it calls the "AT&T 5G Innovation Studio," which is also located in Plano, Texas.  *See, e.g.*, https://about.att.com/pages/5g_innovation_studio.html (last visited October 18, 2023).   Per AT&T's description: "The studio, located in Plano, Texas, brings together the power of AT&T's business, consumer and network organizations to accelerate the path to market for new 5G-centric product offerings and key initiatives. … In this space, we'll work with customers and industry collaborators to ideate, test and validate new 5G-centric applications across a variety of industries."

*Id.* On information and belief, AT&T uses the AT&T 5G Innovation Studio to design, test, use, promote, and sell services for the AT&T Wireless Networks that infringe the Patent-In-Suit.

20.     AT&T has numerous employees who work in Texas, including within the Eastern District of Texas.  In addition to its many retail stores in Texas and in this District, AT&T also has its corporate headquarters located in Dallas, Texas.  *See* https://www.headquartersinfo.com/att-headquarters-information/ (last visited October 18, 2023).

21.     AT&T has solicited business in the Eastern District of Texas, has transacted business within this District, and has attempted to derive financial benefit from the residents of this District, including benefits directly related to AT&T's infringement of the Patent-In-Suit.

22.     In other recent actions, AT&T has either admitted or not contested that the Eastern District of Texas is a proper venue for patent infringement actions against it.  *See, e.g., Daingean Technologies LTC. v. AT&T Inc.*, No. 2:23-cv-00123, Dkt. 22 ¶ 24 (E.D. Tex. June 1, 2023) ("AT&T does not contest that venue is proper in this district for purposes of this litigation"); *Wireless Alliance, LLC v. AT&T Mobility LLC*, No. 2:23-cv-00095, Dkt. 11 ¶¶ 9-10 (E.D. Tex. May 26, 2023).

23.     Defendants are properly joined under 35 U.S.C. § 299(a) because, on information and belief, Defendants commonly and/or jointly make, use, sell, offer to sell, and/or import the AT&T Wireless Networks such that at least one right to relief is asserted against Defendants jointly, severally, and in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, selling, offering to sell, and/or importing into the United States of the same AT&T Wireless Networks, and such that questions of fact common to all Defendants will arise in this action.

## THE PATENT-IN-SUIT

24.      U.S. Patent No. 10,951,359 ("the '359 Patent" or "Patent-In-Suit") was duly and legally issued on March 16, 2021, for an invention titled, "Method and Apparatus For Providing Control Resource Set Configuration In A Wireless Communication System."

25.      Plaintiffs own all rights to the Patent-In-Suit that are necessary to bring this action, including all rights to sue for infringement and to recover past and future damages.  Celerity is the exclusive licensee of the Patent-In-Suit, and ATL is the owner by assignment of the Patent-In-Suit. Patent owner ATL has voluntarily joined as a Plaintiff in this litigation.

26.      AT&T is not currently licensed to practice the Patent-In-Suit.

27.      The Patent-In-Suit is valid and enforceable.

28.      AT&T has had knowledge and notice of the Patent-In-Suit, and its infringement thereof, at least since February 1, 2023, when Plaintiffs provided AT&T access to claim charts evidencing AT&T's infringement of the Patent-In-Suit.

## PLAINTIFFS' COMPLIANCE WITH THE ETSI IPR POLICY AND DEFENDANTS' FAILURE TO COMPLY

29.      The European Telecommunications Standards Institute ("ETSI") is an independent, non-profit standard setting organization ("SSO") that produces globally-accepted standards in the telecommunications industry.  In addition to its own activities, ETSI is also one of several SSOs that are organization partners of the Third Generation Partnership Project ("3GPP"), which maintains and develops globally applicable technical specifications, including for 3G, 4G, and 5G wireless communication technologies.  ETSI and its members have developed global standards that ensure worldwide interoperability between wireless networks, network operators, and devices.

30.      ETSI has developed and promulgated an IPR Policy, which is intended to strike a balance between the need for open standards on the one hand, and the rights of IPR owners on the other hand.  Clause 15.6 of the ETSI IPR Policy defines the term "ESSENTIAL" to mean that "it is not possible on technical (but not commercial) grounds, taking into account normal technical

practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR."  ETSI IPR Policy § 15.6 (Nov. 30, 2022).

31.     In an abundance of caution and to ensure their compliance with ETSI's IPR Policy, the Plaintiffs informed AT&T that they were prepared to grant AT&T an irrevocable license to the Plaintiffs' patents that relate to 3G, 4G, and/or 5G wireless technologies, including to the Patent-In-Suit, on license terms that are Fair, Reasonable, and Non-Discriminatory ("FRAND").  The ETSI IPR Policy entitles a FRAND license to implementers that "MANUFACTURE …, sell, lease, or otherwise dispose of, … repair, use, or operate EQUIPMENT," and/or "use METHODS":

| 6 | Availability of Licences |
|---|---|
| 6.1 | When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licences on fair, reasonable and non-discriminatory ("FRAND") terms and conditions under such IPR to at least the following extent: |
| |    -  MANUFACTURE, including the right to make or have made customized components and sub-systems to the licensee's own design for use in MANUFACTURE; |
| |    -  sell, lease, or otherwise dispose of EQUIPMENT so MANUFACTURED; |
| |    -  repair, use, or operate EQUIPMENT; and |
| |    -  use METHODS. |
| | The above undertaking may be made subject to the condition that those who seek licences agree to reciprocate. |

ETSI IPR Policy § 6.1 (Nov. 30, 2022).

32.     Not later than August 25, 2022, the Plaintiffs sent AT&T correspondence initiating Plaintiff's good faith efforts to license their patents to AT&T on FRAND terms.

33.     Over the following months, the Plaintiffs' representatives corresponded with AT&T representatives on several occasions.  During such correspondence, the Plaintiffs' representatives provided, in good faith, materials concerning their patents and technical details evidencing the use of their patents, including the Patent-In-Suit.  For example, not later than February 1, 2023, the Plaintiffs' representatives provided AT&T credentials to access an online data room containing

- 10 -

numerous example claim charts evidencing the use of Plaintiffs' patents, including the Patent-In-Suit.

34.    The Plaintiffs' representatives have provided AT&T multiple opportunities to license the Plaintiffs' patents on FRAND terms.

35.    To date, AT&T has not reciprocated the Plaintiffs' good faith efforts to negotiate a FRAND license.  AT&T has failed to negotiate in good faith.  AT&T has instead declined to take a license to the Plaintiffs' valuable intellectual property, including the Patent-In-Suit.

36.    AT&T has operated and continues to operate the AT&T Wireless Networks without a license to the Plaintiffs' patents, including the Patent-In-Suit.  Given AT&T's unwillingness to license the Plaintiffs' patents, or to cease its infringement, the Plaintiffs have filed this lawsuit for the purpose of protecting their patent rights in the United States.

37.    The parties' licensing negotiations have been unsuccessful because AT&T has refused to engage in a good faith licensing discussion concerning the Plaintiffs' valuable patents.

## GENERAL INFRINGEMENT ALLEGATIONS

38.    AT&T has imported/exported into/from the United States, manufactured, used, marketed, offered for sale, and/or sold in the United States, the AT&T Wireless Networks that infringe the Patent-In-Suit.  For example, and as will be outlined further below, the AT&T Wireless Networks infringe the Patent-In-Suit in providing wireless services.

39.    AT&T employed 3G technology in the AT&T Wireless Networks for much of the past decade.  Given the significant advancements subsequently made with 4G and 5G technologies, AT&T reportedly discontinued its 3G wireless network coverage on February 22, 2022.  *See, e.g.*, https://www.commsupdate.com/articles/2022/02/23/att-switches-off-3g-network/   (last   visited October 18, 2023).

40.    AT&T added 4G technology (also sometimes referred to as "LTE" or "4G LTE") to the AT&T Wireless Networks more than decade ago, such that by at least 2013, AT&T touted

that the AT&T Wireless Networks had "[n]early 280 million people covered by AT&T 4G LTE."

https://www.att.com/Investor/ATT_Annual/2013/4g_lte_network_awards.html (last visited

October 18, 2023).  As of the filing of this Complaint, 4G coverage remains active in the AT&T

Wireless Networks.  *See* https://www.att.com/maps/wireless-coverage.html (last visited October

18, 2023).

41.     AT&T began adding 5G technology to the AT&T Wireless Networks at least by

December 21, 2018, with AT&T reporting that "[o]ur standards-based mobile 5G network is live

today in parts of 12 cities."  https://about.att.com/story/2018/att_brings_5g_service_to_us.html

(last visited October 18, 2023).  AT&T touted that "AT&T will be the first and only company in

the U.S. to offer a mobile 5G device over a commercial, standards-based mobile 5G network."  *Id.*

Since its initial rollout in 2018, AT&T has continued to grow the geographic scope of 5G coverage

across the AT&T Wireless Networks, such that as of the filing of this Complaint, AT&T advertises

that its 5G coverage "reaches 290 million people in more than 24,000 cities and towns in the U.S."

https://about.att.com/pages/5g-plus.html (last visited October 18, 2023).

42.     As of the filing of this Complaint, the AT&T Wireless Networks continue to

actively employ both 4G and 5G technologies throughout the United States, including in the

Eastern District of Texas.  In many geographic locations, the AT&T Wireless Networks employ

both 4G and 5G technologies concurrently, allowing end-user devices to utilize the best connection

that the device is capable of supporting.  AT&T's website provides a map showing the geographic

coverage for 4G and 5G within the AT&T Wireless Networks:



*See, e.g.*, https://www.att.com/maps/wireless-coverage.html (last visited October 18, 2023).

43.     The AT&T Wireless Networks employ what AT&T refers to as both "5G" and "5G+" variants of 5G.  As AT&T explains on its website:  "AT&T delivers three flavors of 5G to our customers to give them unique experiences, faster speeds and capacity to do more of the things they like on America's Most Reliable 5G Network."  https://about.att.com/pages/5g-plus.html (last visited October 18, 2023).  First, "AT&T 5G using low-band spectrum reaches 290 million people in more than 24,000 cities and towns in the U.S."  *Id.*  Second, "AT&T 5G+ mid-band spectrum sits between [the] other two bands and provides a great combination of ultra-fast speeds and wide geographic coverage."  *Id.*  Third, "AT&T 5G+ using millimeter wave spectrum delivers super-fast speeds and unprecedented performances in high traffic areas including parts of more than 50 cities and more than 70 venues and airports."  *Id.* (emphasis added).  As used in this Complaint, the term "5G" is intended to encompass all variants of 5G used by the AT&T Wireless Networks.

44.     AT&T has frequently touted the benefits of 3G, 4G, and 5G technologies in the AT&T Wireless Networks.  For example, as AT&T presently states on its website:  "AT&T 5G helps communities stay connected to fast, reliable and secure mobile experiences to help simplify, enhance and change lives."   https://about.att.com/pages/5G (last visited October 18, 2023).  "AT&T 5G is rapidly expanding and connecting people to moments that matter most.  From everyday situations to life-changing events, we've invested billions and continue to expand 5G."  *Id.*  AT&T touts that "[w]e're in the early decade of what 5G can do but it's already bringing magic to work, life and play."  *Id.*  For example, AT&T states that "AT&T 5G makes it possible for businesses to think and operate differently, driving innovations for today and for the future.  Faster speeds, lower latency and massive connectivity open new possibilities for businesses to revolutionize industries."  *Id.*  Likewise, AT&T asserts that "AT&T 5G transforms government operations by connecting communities and strengthens public safety communications by helping save lives with 5G on FirstNet," a wireless platform dedicated to first responders.  *Id.*  Similarly, AT&T expounds 5G's benefits to education, advertising that "AT&T 5G is changing the learning landscape by transforming college and university labs, curriculum, and the campus experience."  *Id.*  AT&T has likewise in the past advertised the benefits of 4G and 3G in the AT&T Wireless Networks, including in particular during periods when those were the leading technologies at the time.

45.     AT&T has directly and indirectly infringed, and continues to directly and indirectly infringe, each of the Patent-In-Suit by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), and/or (c), including but not limited to making, using, selling and offering to sell, in this District and elsewhere in the United States, and importing into and exporting from the United States, products and/or services that infringe the Patent-In-Suit.

46.     AT&T has directly infringed and continues to directly infringe the Patent-In-Suit, as provided in 35 U.S.C. § 271(a), including at least by AT&T making, using, selling, offering to

sell, and/or importing the AT&T Wireless Networks.  For example, and as will be outlined further below, the AT&T Wireless Networks infringe the Patent-In-Suit in providing wireless services.

47.     AT&T has also indirectly infringed and continues to indirectly infringe the Patent-In-Suit, as provided in 35 U.S.C. § 271(b), including at least by inducing infringement by others, such as AT&T's customers and end-users, in this District and elsewhere in the United States, to use the AT&T Wireless Networks in manners that infringe the Patent-In-Suit.  For example, AT&T's customers and end-users directly infringe via their use of the AT&T Wireless Networks, infringing the Patent-In-Suit.  AT&T induces such direct infringement through its affirmative acts of making, using, selling, offering to sell, and/or importing the AT&T Wireless Networks, as well as by advertising its wireless network technologies and providing instructions, documentation, and other information to its customers and end-users to encourage and teach them how to use the infringing wireless network technologies, including but not limited to by AT&T providing in-store and online technical support, marketing materials, product manuals, advertisements, and other product documentation.  AT&T performs these affirmative acts with knowledge of the Patent-In-Suit and with the intent, or willful blindness, that the induced acts directly infringe the Patent-In-Suit.

48.     AT&T has also indirectly infringed and continues to indirectly infringe the Patent-In-Suit, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as AT&T's customers and end-users, in this District and elsewhere in the United States.  AT&T's affirmative acts of selling and offering to sell wireless services in this District and elsewhere in the United States, and causing the AT&T Wireless Networks to be manufactured, used, sold, and offered for sale, contribute to AT&T's customers and end-users use of the AT&T Wireless Networks, such that the Patent-In-Suit are directly infringed.  The accused components in the AT&T Wireless Networks are material to the inventions claimed in the Patent-In-Suit, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by AT&T to be especially made or adapted for use in the infringement of the Patent-In-

Suit.  AT&T performs these affirmative acts with knowledge of the Patent-In-Suit and with the intent, or willful blindness, that they cause direct infringement of the Patent-In-Suit.

49.    AT&T's infringement of the Patent-In-Suit has caused damage to the Plaintiffs. The Plaintiffs are entitled to recover from AT&T the damages sustained by the Plaintiffs as a result of AT&T's wrongful acts in an amount subject to proof at trial.

50.    AT&T's infringement of the Patent-In-Suit has been and continues to be willful. AT&T has had knowledge and notice of the Patent-In-Suit, and its infringement thereof, at least since February 1, 2023, when Plaintiffs provided AT&T access to claim charts evidencing AT&T's infringement of the Patent-In-Suit.  Despite this, AT&T continues without license to make, use, sell, offer to sell, and/or import products and/or services that infringe the Patent-In-Suit, including the AT&T Wireless Networks, thereby willfully continuing AT&T's infringement.

51.    In the interest of providing detailed averments of infringement, the Plaintiffs below demonstrate infringement for at least one claim of the Patent-In-Suit.  However, the exemplary claims and exemplary mappings provided herein should not be considered limiting, and additional claims and mappings will be disclosed per the Court's rules relating to infringement contentions.

## COUNT I:  INFRINGEMENT OF THE '359 PATENT

52.    Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

53.    U.S. Patent No. 10,951,359 ("the '359 Patent" or "Patent-In-Suit") was duly and legally issued on March 16, 2021, for an invention titled, "Method and Apparatus For Providing Control Resource Set Configuration In A Wireless Communication System."

54.    Plaintiffs own all rights to the '359 Patent that are necessary to bring this action.

55.    AT&T is not currently licensed to practice the '359 Patent.

56.     AT&T infringes, contributes to the infringement of, and/or induces infringement of the '359 Patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States the AT&T Wireless Networks.

57.      For example, the AT&T Wireless Networks infringe at least claim 1 of the '359 Patent in providing 5G wireless services.  For example, and to the extent the preamble is limiting, the AT&T Wireless Networks practice a method of a network node.  For example, the AT&T Wireless Networks practice a method of a network node in providing 5G wireless services.  On information and belief, this functionality requires the AT&T Wireless Networks in their entirely assembled form, as specifically provisioned and operated by AT&T.

58.     The AT&T Wireless Networks further practice the step of transmitting a signal indicating at least a first duration and a bitmap.  For example, in providing 5G wireless services, the AT&T Wireless Networks practice the step of transmitting a radio resource control ("RRC") reconfiguration message indicating at least a first duration of a control resource set ("CORESET") and a bitmap for monitoring symbols within a slot.  On information and belief, this functionality requires the AT&T Wireless Networks in their entirely assembled form, as specifically provisioned and operated by AT&T.

59.     The AT&T Wireless Networks further practice the foregoing method wherein the first duration is time duration of a control resource set (CORESET).  For example, in providing 5G wireless services, the AT&T Wireless Networks practice the foregoing method wherein the duration is a time duration of the CORESET in number of symbols.  On information and belief, this functionality requires the AT&T Wireless Networks in their entirely assembled form, as specifically provisioned and operated by AT&T.

60.     The AT&T Wireless Networks further practice the foregoing method wherein the bit map includes a set of bit positions, where each bit position has a value of one or zero and each bit position with the value of one indicates a starting Orthogonal Frequency Division Multiplexing

(OFDM) symbol of a monitoring occasion of the CORESET within a slot.  For example, in providing 5G wireless services, the AT&T Wireless Networks practice the foregoing method wherein the bitmap for monitoring symbols within a slot includes a set of bit positions each with a value of one or zero, with the most significant bit representing the first OFDM symbol in a slot, the second most significant bit representing the second OFDM symbol, and so on, and where each bit set to one indicates a starting OFDM symbol of a monitoring occasion of the CORESET within the slot.  On information and belief, this functionality requires the AT&T Wireless Networks in their entirely assembled form, as specifically provisioned and operated by AT&T.

61.    The AT&T Wireless Networks further practice the step of not allowing to transmit the signal such that an interval between any two bit positions with the value of one in the set of bit positions in the bit map is smaller than the first duration.  For example, in providing 5G wireless services, the AT&T Wireless Networks practice the step of not allowing transmission of a bitmap for monitoring symbols within a slot if the interval between any two bit positions with the value of one in the bitmap is smaller than the defined time duration of the CORESET in number of symbols.  On information and belief, this functionality requires the AT&T Wireless Networks in their entirely assembled form, as specifically provisioned and operated by AT&T.

62.    Accordingly, as illustrated above, the AT&T Wireless Networks directly infringe one or more claims of the '359 Patent.  AT&T makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, the AT&T Wireless Networks and thus directly infringes the '359 Patent.

63.    AT&T has also indirectly infringed and continues to indirectly infringe the '359 Patent, as provided in 35 U.S.C. § 271(b), including at least by inducing infringement by others, such as AT&T's customers and end-users, in this District and elsewhere in the United States, to use the AT&T Wireless Networks in manners that infringe the '359 Patent.  For example, AT&T's customers and end-users directly infringe via their use of the AT&T Wireless Networks to access

and use 4G and 5G wireless network technologies, infringing the '359 Patent. AT&T induces such direct infringement through its affirmative acts of making, using, selling, offering to sell, and/or importing the AT&T Wireless Networks, as well as by advertising its infringing wireless network technologies and providing instructions, documentation, and other information to its customers and end-users to encourage and teach them how to use the infringing wireless network technologies, including but not limited to by AT&T providing in-store and online technical support, marketing materials, product manuals, advertisements, and other product documentation. AT&T performs these affirmative acts with knowledge of the '359 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '359 Patent.

64.    AT&T has also indirectly infringed and continues to indirectly infringe the '359 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as AT&T's customers and end-users, in this District and elsewhere in the United States. AT&T's affirmative acts of selling and offering to sell wireless services in this District and elsewhere in the United States, and causing the AT&T Wireless Networks to be manufactured, used, sold, and offered for sale, contribute to AT&T's customers and end-users use of the AT&T Wireless Networks, such that the '359 Patent is directly infringed. The accused components in the AT&T Wireless Networks are material to the inventions claimed in the '359 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by AT&T to be especially made or adapted for use in the infringement of the '359 Patent. AT&T performs these acts with knowledge of the '359 Patent and with the intent, or willful blindness, that they cause direct infringement of the '359 Patent.

65.    AT&T's infringement of the '359 Patent has damaged and will continue to damage the Plaintiffs.

66.    AT&T has had knowledge of the '359 Patent, and its infringement thereof, at least since February 1, 2023, when Plaintiffs provided AT&T access to claim charts evidencing AT&T's

infringement of the '359 Patent.  AT&T continues without license to make, use, sell, offer to sell, and/or import the AT&T Wireless Networks, willfully continuing AT&T's infringement.

## COUNT II:  DECLARATORY JUDGMENT THAT THE PLAINTIFFS HAVE COMPLIED WITH ETSI OBLIGATIONS AND COMPETITION LAW AND THAT THE DEFENDANTS HAVE NOT

67.     Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

68.     In an abundance of caution and to ensure their compliance with ETSI's IPR Policy, the Plaintiffs informed AT&T that they were prepared to grant AT&T a license, on FRAND terms, to the Plaintiffs' patents that relate to AT&T's infringing Wireless Networks.

69.     Not later than August 25, 2022, the Plaintiffs sent AT&T correspondence initiating the Plaintiff's good faith efforts to license their patents to AT&T on FRAND terms.

70.     Over the following months, the Plaintiffs' representatives routinely corresponded with AT&T representatives on several occasions.  The Plaintiffs' representatives provided, in good faith, materials concerning their patents and technical details evidencing the use of their patents, including the Patent-In-Suit.  For example, not later than February 1, 2023, the Plaintiffs' representatives provided AT&T credentials to access an online data room containing numerous example claim charts evidencing the use of Plaintiffs' patents, including the Patent-In-Suit.

71.     The Plaintiffs have provided AT&T multiple opportunities to license the Plaintiffs' patents on FRAND terms.  Despite this, AT&T has not reciprocated Plaintiffs' good faith efforts. AT&T has instead declined to take a FRAND license, while continuing to operate the infringing AT&T Wireless Networks without a license to the Plaintiffs' patents.

72.     The parties' FRAND license negotiations have been unsuccessful because AT&T has not negotiated in good faith.  AT&T has failed to reciprocate the Plaintiffs' good faith efforts.

73.     There are disputes between the Plaintiffs and AT&T concerning, among other things, whether AT&T is infringing the Patent-In-Suit, whether AT&T must take a license to the

Patent-In-Suit, and what terms that license should include (whether FRAND terms or otherwise). The Plaintiffs have fully performed all obligations they may have under the FRAND contract, but AT&T has refused to license Plaintiffs' patents on the FRAND terms the Plaintiffs have offered. AT&T also has not reciprocated the Plaintiffs' efforts to negotiate a FRAND license in good faith. There is a case or controversy of sufficient immediacy, reality, and ripeness to warrant the issuance of declaratory judgment.

74.     Accordingly, the Plaintiffs request a declaratory judgment by this Court finding that Plaintiffs' actions in connection with their negotiations toward a FRAND license with AT&T were conducted by Plaintiffs in good faith, complied with the ETSI IPR Policy, and were consistent with competition law requirements.

75.     Further, the Plaintiffs request a declaratory judgment by this Court finding that AT&T has not negotiated with Plaintiffs in good faith, has not complied with ETSI's IPR Policy, and has waived any rights it may have under the ETSI IPR Policy.

## DAMAGES

76.     As a result of Defendants' acts of infringement, Plaintiffs have suffered actual and consequential damages.  To the fullest extent permitted by law, Plaintiffs seek recovery of damages at least in the form of reasonable royalties.

## DEMAND FOR JURY TRIAL

77.     Plaintiffs hereby demand a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor ordering, finding, declaring, and/or awarding Plaintiffs relief as follows:

A.     that AT&T infringes the Patent-In-Suit;

B.     an award of damages resulting from AT&T's acts of infringement in accordance with 35 U.S.C. § 284;

C.      that AT&T's infringement of the Patent-In-Suit is willful;

D.      enhanced damages pursuant to 35 U.S.C. § 284;

E.      a declaration that Plaintiffs, in their history of negotiations with AT&T in regard to a global license to the Plaintiffs' patents, have negotiated in good faith and have complied with the ETSI IPR Policy and any applicable laws, and with competition law;

F.      a declaration that Defendants have not negotiated in good faith, have not complied with the ETSI IPR Policy, and have waived any rights they may have under the ETSI IPR Policy;

G.      that this is an exceptional case and awarding the Plaintiffs their reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

H.      an accounting for acts of infringement and supplemental damages for infringement and/or damages not presented at trial, including, without limitation, pre-judgment and post-judgment interest;

I.      all equitable relief the Court deems just and proper; and

J.      such other relief which may be requested and to which the Plaintiffs are entitled.


DATED:  October 19, 2023                          Respectfully submitted,

                                                  /s/ *Robert Christopher Bunt*

                                                  Robert C. Bunt
                                                  Texas State Bar No. 00787165
                                                  rcbunt@pbatyler.com
                                                  **PARKER, BUNT & AINSWORTH, P.C.**
                                                  100 E. Ferguson, Suite 418
                                                  Tyler, Texas 75702
                                                  Tel:  (903) 531-3535

                                                  Jason Sheasby
                                                  California State Bar No. 205455
                                                  (*pro hac vice* to be filed)
                                                  jsheasby@irell.com
                                                  Hong (Annita) Zhong, PhD
                                                  California State Bar No. 266924
                                                  (*pro hac vice* to be filed)
                                                  hzhong@irell.com
                                                  Christopher Abernethy
                                                  California State Bar No. 275986

(*pro hac vice* to be filed)
cabernethy@irell.com
Tony Rowles
California State Bar No. 301209
(*pro hac vice* to be filed)
trowles@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Tel:  (310) 277-1010

**ATTORNEYS FOR PLAINTIFFS
ASUS TECHNOLOGY LICENSING INC.
AND CELERITY IP, LLC**