## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ASUS TECHNOLOGY LICENSING INC. AND CELERITY IP, LLC, <br><br> **Plaintiffs,** <br><br> vs. <br><br> AT&T CORP., AT&T MOBILITY LLC, AT&T MOBILITY II LLC, AND AT&T SERVICES INC., <br><br> **Defendants.** | Civil Action No. 2:23-cv-00486 <br><br><br> **JURY TRIAL DEMANDED** |
| AT&T CORP., AT&T MOBILITY LLC, AT&T MOBILITY II LLC, AND AT&T SERVICES INC., <br><br> **Counterclaim Plaintiffs,** <br><br> vs. <br><br> ASUSTEK COMPUTER INC., ASUS TECHNOLOGY LICENSING INC. AND CELERITY IP, LLC, <br><br> **Counterclaim Defendants.** | |

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFFS ASUS TECHNOLOGY LICENSING INC. AND CELERITY IP, LLC'S ORIGINAL COMPLAINT

Defendants AT&T Corp., AT&T Mobility LLC, AT&T Mobility II LLC, and AT&T

Services, Inc. (collectively, "AT&T" or "Defendants"), by and through their attorneys, hereby

answer the Complaint of ASUS Technology Licensing Inc. ("ATL") and Celerity IP ("Celerity")

(collectively, "Plaintiffs").[1] The numbered paragraphs below correspond to the numbered

---

[1] Plaintiffs' Complaint also included claims against AT&T Inc. Plaintiffs have, however, filed an Unopposed Notice of Dismissal Without Prejudice pursuant to Fed. R. Civ. P. 41(a) dismissing all

paragraphs in the Complaint and constitute AT&T's responsive admissions, denials, and allegations thereto. Except as otherwise expressly set forth and admitted below, AT&T denies each and every allegation contained in the Complaint, including without limitation the headings and subheadings.

AT&T specifically denies liability to Plaintiffs, or that Plaintiffs have suffered any legally cognizable damage for which AT&T is responsible. AT&T expressly reserves the right to amend and/or supplement its answer and defenses.

## NATURE OF THE ACTION[2]

1.     AT&T denies the allegations in Paragraph 1.

## THE PARTIES

2.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint, and therefore denies these allegations.

3.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint, and therefore denies these allegations.

4.     Plaintiff has voluntarily dismissed AT&T, Inc. from this lawsuit. No response is required to the allegations in Paragraph 4 of the Complaint because AT&T, Inc. is no longer a party to this action.

5.     AT&T admits that AT&T Corp. is a corporation organized and existing under the laws of New York. AT&T admits that the website of the Texas Secretary of State states that AT&T Corp.'s Filing Number is 480306, that the Original Date of Filing for AT&T Corp. is February 11,

---

claims against this entity. As used herein, the terms "AT&T" and "Defendants" do not include AT&T Inc.

[2] Headings are reproduced for organizational structure only and are not adopted or admitted by Defendants.

1925, and that CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201 is a registered agent for AT&T Corp. AT&T admits that AT&T Corp. is a direct or indirect subsidiary of AT&T Inc.

6.     AT&T admits that AT&T Mobility LLC is a limited liability company organized and existing under the laws of Delaware. AT&T admits that the website of the Texas Secretary of State states that AT&T Mobility LLC's Filing Number is 707861123, that the Original Date of Filing for AT&T Mobility LLC is November 21, 2000, and that CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201 is a registered agent for AT&T Mobility LLC. AT&T admits that AT&T Mobility LLC is a direct or indirect subsidiary of AT&T Inc.

7.     AT&T admits that AT&T Mobility II LLC is a limited liability company organized and existing under the laws of Delaware. AT&T admits that the website of the Texas Office of the Comptroller states that AT&T Mobility II LLC's Right to Transact Business in Texas is active, that AT&T Mobility II LLC's Texas Taxpayer Number is 18416599704, and that a Mailing Address for AT&T Mobility II LLC is 1010 N Saint Marys St Rm 9-Y01 San Antonio, TX. AT&T admits that the website of the Delaware Department of State states that the Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801 is a registered agent for AT&T Mobility II LLC and that AT&T Mobility II LLC is a direct or indirect subsidiary of AT&T Inc. The other allegations in Paragraph 7 contain legal conclusions to which no response is required. To the extent a response is required, AT&T denies the allegations in Paragraph 7.

8.     AT&T admits that AT&T Services, Inc. is a corporation organized and existing under the laws of Delaware. AT&T admits that the website of the Texas Secretary of State states that AT&T Services, Inc.'s Filing Number is 10935606, that the Original Date of Filing is April 5, 1996, and that CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201 is a

registered agent for AT&T Services, Inc. AT&T admits that AT&T Services, Inc. is a direct or indirect subsidiary of AT&T Inc.

## JURISDICTION AND VENUE

9.      To the extent Plaintiffs purport to bring a civil action arising under the patent laws of the United States, AT&T does not contest, for purposes of this case only, subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). AT&T specifically denies the legal sufficiency of Plaintiffs' claims and allegations, and further denies that Plaintiffs have any viable claim thereunder. To the extent Plaintiffs do not have substantially all rights in the Asserted Patent, AT&T also specifically denies that Plaintiffs have standing to bring this lawsuit, and thus denies that this Court has subject matter jurisdiction over this dispute.

10.     The allegations in Paragraph 10 contain legal conclusions to which no response is required. To the extent a response is required, AT&T denies the allegations in Paragraph 10.

11.     AT&T admits that certain of the Defendants have conducted business in the Eastern District of Texas. AT&T denies the other allegations in Paragraph 11.

12.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint, and therefore denies these allegations.

13.     The allegations in Paragraph 13 contain legal conclusions to which no response is required. To the extent a response is required, AT&T does not contest that venue is proper in this district for purposes of this litigation only. AT&T denies all other allegations in Paragraph 13.

14.     AT&T admits that it operates one or more wireless telecommunications networks in the United States, including in this judicial district, under the brand names "AT&T" and "Cricket Wireless." AT&T otherwise denies the allegations in Paragraph 14.

15.     AT&T admits that it has advertised its 4G and 5G services in the United States, including in Texas and within the Eastern District of Texas. AT&T states that the content on its

website speaks for itself. To the extent that Plaintiffs have mischaracterized such content, AT&T denies the allegations in Paragraph 15. AT&T denies all other allegations in Paragraph 15.

16.     AT&T admits that there are retail stores under the brand name AT&T in the Eastern District of Texas. AT&T states that the content on its website speaks for itself. To the extent that Plaintiffs have mischaracterized such content, AT&T denies the allegations in Paragraph 16. AT&T denies all other allegations in Paragraph 16.

17.     AT&T admits that there are retail stores under the brand name AT&T in the Eastern District of Texas. AT&T states that the content on its website speaks for itself. To the extent that Plaintiffs have mischaracterized such content, AT&T denies the allegations in Paragraph 17. AT&T denies all other allegations in Paragraph 17.

18.     AT&T admits that it maintains a location at 2900 West Plano Parkway, Plano, TX 75075. AT&T states that the content on its website speaks for itself. To the extent that Plaintiffs have mischaracterized such content, AT&T denies the allegations in Paragraph 18. AT&T denies all other allegations in Paragraph 18.

19.     AT&T admits that Plaintiffs purport to reference AT&T's website. AT&T states that the content on its website speaks for itself. To the extent that Plaintiffs have mischaracterized such content, AT&T denies the allegations in Paragraph 19. AT&T denies all other allegations in Paragraph 19.

20.     AT&T admits that it has employees who work in the State of Texas and in the Eastern District of Texas. AT&T denies all other allegations in Paragraph 20.

21.     AT&T admits that it has transacted business in the Eastern District of Texas. AT&T denies all other allegations in Paragraph 21.

22.     AT&T admits that Plaintiffs purport to reference AT&T's pleadings in other

matters. AT&T states that the content of these pleadings speaks for itself. To the extent that Plaintiffs have mischaracterized such content, AT&T denies the allegations in Paragraph 22.

23.     The allegations in Paragraph 23 contain legal conclusions to which no response is required.

## THE PATENT-IN-SUIT

24.     AT&T admits that, on its face, U.S. Patent No. 10,951,359 ("the '359 Patent" or the "Asserted Patent") bears the name "Method and Apparatus For Providing Control Resource Set Configuration In A Wireless Communication System" and appears to bear an issue date of March 16, 2021. The remaining allegations in Paragraph 24 contain legal conclusions to which no response is required. To the extent a response is required, AT&T denies the allegations in Paragraph 24.

25.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint, and therefore denies these allegations.

26.     AT&T denies the allegations in Paragraph 26.

27.     AT&T denies the allegations in Paragraph 27.

28.     AT&T denies the allegations in Paragraph 28.

## PLAINTIFFS' COMPLIANCE WITH THE ETSI IPR POLICY AND DEFENDANTS' FAILURE TO COMPLY

29.     AT&T admits that the European Telecommunications Standards Institute (ETSI) is an independent, non-profit standard development organization (SDO) that promulgates globally-accepted standards for the telecommunications industry.  AT&T admits that ETSI is one of several organizational partners of the Third Generation Partnership Project (3GPP), and that 3GPP created the technical specifications for 3G, 4G, and 5G. AT&T admits that ETSI and its members have developed global standards and that an objective of ETSI is to "produce and perform the

maintenance of the technical standards . . . which are necessary to achieve a large unified European market for telecommunications, ICT, other electronic communications networks and services and related areas."

30.     AT&T admits that Plaintiffs purport to quote from and cite to the ETSI IPR Policy, which speaks for itself. To the extent that Plaintiffs have mischaracterized such content, AT&T denies the allegations in Paragraph 30. AT&T denies all other allegations in Paragraph 30.

31.     AT&T admits that Plaintiffs purport to quote from the ETSI IPR Policy, which speaks for itself. To the extent that Plaintiffs have mischaracterized such content, AT&T denies the allegations in Paragraph 31. AT&T denies all other allegations in Paragraph 31.

32.     AT&T admits that it received correspondence from Celerity dated August 25, 2022. AT&T denies all other allegations contained in Paragraph 32.

33.     AT&T admits that it received one or more invitations on or around February 1, 2023 to view materials purportedly stored by Celerity in an online data room. AT&T denies that it accessed the online data room. AT&T denies all other allegations in Paragraph 33.

34.     AT&T denies the allegations in Paragraph 34.

35.     AT&T denies the allegations in Paragraph 35.

36.     AT&T admits that it operates the one or more wireless networks in the United States. AT&T denies all other allegations contained in Paragraph 36.

37.     AT&T denies the allegations in Paragraph 37.

## GENERAL INFRINGEMENT ALLEGATIONS

38.     AT&T denies the allegations in Paragraph 38.

39.     AT&T admits that Plaintiffs purport to reference content of a third-party website, which speaks for itself. To the extent that Plaintiffs have mischaracterized such content or attempt to attribute it to AT&T, AT&T denies the allegations in Paragraph 39. AT&T otherwise denies the

allegations in Paragraph 39.

40.     AT&T admits that its networks are interoperable with certain aspects of one or more cellular standards, including 4G LTE and 5G NR. AT&T further admits that Plaintiffs purport to quote from AT&T's website, which speaks for itself. To the extent that Plaintiffs have mischaracterized such content, AT&T denies the allegations in Paragraph 40. AT&T otherwise denies the allegations in Paragraph 40.

41.     AT&T admits that its networks are interoperable with certain aspects of one or more cellular standards, including 4G LTE and 5G NR. AT&T further admits that Plaintiffs purport to quote from AT&T's website, which speaks for itself. To the extent that Plaintiffs have mischaracterized such content, AT&T denies the allegations in Paragraph 41. AT&T otherwise denies the allegations in Paragraph 41.

42.     AT&T admits that its networks are interoperable with certain aspects of one or more cellular standards, including 4G LTE and 5G NR. AT&T further admits that Plaintiffs purport to reference content from AT&T's website, which speaks for itself. To the extent that Plaintiffs have mischaracterized such content, AT&T denies the allegations in Paragraph 42. AT&T otherwise denies the allegations in Paragraph 42.

43.     AT&T admits that it operates one or more wireless telecommunications networks. AT&T further admits that Plaintiffs purport to quote from AT&T's website, which speaks for itself. To the extent that Plaintiffs have mischaracterized such content, AT&T denies the allegations in Paragraph 43. AT&T otherwise denies the allegations in Paragraph 43.

44.     AT&T admits that Plaintiffs purport to quote from AT&T's website, which speaks for itself. To the extent that Plaintiffs have mischaracterized such content, AT&T denies the allegations in Paragraph 44. AT&T otherwise denies the allegations in Paragraph 44.

45.     AT&T denies the allegations in Paragraph 45.

46.     AT&T denies the allegations in Paragraph 46.

47.     AT&T denies the allegations in Paragraph 47.

48.     AT&T denies the allegations in Paragraph 48.

49.     AT&T denies the allegations in Paragraph 49.

50.     AT&T denies the allegations in Paragraph 50.

51.     AT&T denies the allegations in Paragraph 51.

**COUNT I: INFRINGEMENT OF THE '359 PATENT**

52.     AT&T incorporates by reference its responses to each of the preceding paragraphs of the Complaint.

53.     AT&T admits that, on its face, U.S. Patent No. 10,951,359 is titled "Method and Apparatus for Providing Control Resource Set Configuration In A Wireless Communication System." AT&T further admits that, on its face, U.S. Patent No. 10,951,359 appears to bear an issue date of March 16, 2021. The remaining allegations in Paragraph 53 contain legal conclusions to which no response is required. To the extent a response is required, AT&T denies the allegations in Paragraph 53.

54.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Complaint.

55.     AT&T denies the allegations in Paragraph 55.

56.     AT&T denies the allegations in Paragraph 56.

57.     AT&T denies the allegations in Paragraph 57.

58.     AT&T denies the allegations in Paragraph 58.

59.     AT&T denies the allegations in Paragraph 59.

60.     AT&T denies the allegations in Paragraph 60.

61.     AT&T denies the allegations in Paragraph 61.

62.     AT&T denies the allegations in Paragraph 62.

63.     AT&T denies the allegations in Paragraph 63.

64.     AT&T denies the allegations in Paragraph 64.

65.     AT&T denies the allegations in Paragraph 65.

66.     AT&T denies the allegations in Paragraph 66.

## COUNT II: DECLARATATORY JUDGMENT THAT THE PLAINTIFFS HAVE COMPLIED WITH ETSI OBLIGATIONS AND COMPETITION LAW AND THAT THE DEFENDANTS HAVE NOT

67.     AT&T incorporates by reference its responses to each of the preceding paragraphs of the Complaint.

68.     AT&T denies the allegations in Paragraph 68.

69.     AT&T admits that it received correspondence from Celerity dated August 25, 2022. AT&T denies all other allegations in Paragraph 69.

70.     AT&T admits that it received one or more invitations on or around February 1, 2023 to view materials purportedly stored by Celerity in an online data room. AT&T denies that it accessed the online data room. AT&T denies all other allegations in Paragraph 70.

71.     AT&T denies the allegations in Paragraph 71.

72.     AT&T denies the allegations in Paragraph 72.

73.     AT&T admits that there are disputes between AT&T and Plaintiffs. AT&T denies all other allegations in Paragraph 73.

74.     AT&T denies that Plaintiffs are entitled to the relief requested. To the extent that Paragraph 74 contains factual allegations relating to AT&T, such allegations are denied.

75.     AT&T denies that Plaintiffs are entitled to the relief requested. To the extent that Paragraph 75 contains factual allegations relating to AT&T, such allegations are denied.

## DAMAGES

76.    AT&T denies the allegations in Paragraph 76.

## DEMAND FOR JURY TRIAL

77.    A response is not required to Plaintiffs' demand for a jury trial. To the extent a response is deemed required, AT&T admits that Plaintiffs demand a trial by jury, but denies that Plaintiffs are entitled to any relief that they have requested in this Complaint. AT&T also demands a jury trial for all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

AT&T denies that Plaintiffs are entitled to the relief requested in Plaintiffs' prayer for relief and, to the extent that such prayer contains factual allegations relating to AT&T, such allegations are denied. Plaintiffs' prayer for relief should be denied, with prejudice, in its entirety. Plaintiffs are not entitled to any relief, including any fees or costs. Plaintiffs' allegations of infringement, including their allegations of willful infringement, should be dismissed in their entirety.

## DEFENSES

Further answering the Complaint and as additional defenses thereto, AT&T asserts the following defenses. AT&T does not intend hereby to assume the burden of proof with these matters as to which, pursuant to law, Plaintiffs bear the burden. AT&T reserves the right to add additional defenses and/or supplement its defenses, including (but not limited to) those related to unenforceability based upon inequitable conduct, as AT&T learns additional facts.

## FIRST DEFENSE
### (Failure to State a Claim)

The Plaintiffs fail to state a claim upon which relief can be granted.

**SECOND DEFENSE**
**(Non-Infringement)**

AT&T has not infringed and does not infringe any valid and enforceable claim of the Asserted Patent, directly, indirectly, contributorily, or by inducement, either literally or by the doctrine of equivalents. Further, Plaintiffs are precluded under the doctrines of disclaimer and prosecution history estoppel from asserting a scope for any claim of the Asserted Patent that would encompass any AT&T product or service.

**THIRD DEFENSE**
**(No Willful Infringement)**

Plaintiffs are not entitled to enhanced damages under 35 U.S.C. § 284 because Plaintiffs have failed to meet, and cannot meet as a matter of law, the requirements for willful infringement.

**FOURTH DEFENSE**
**(Invalidity / Ineligibility)**

Each claim of the Asserted Patent is invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112. For example, each claim is invalid in view of the references cited by the Examiner and arguments made by the Applicants during prosecution of the application that issued as the Asserted Patent.

**FIFTH DEFENSE**
**(License, Exhaustion)**

Plaintiffs' claims are barred in whole or in part by one or more of the following: express or implied license (including any licenses executed by prior owners of the Asserted Patent and/or any licenses entered into by AT&T's suppliers of the accused products), doctrine of patent exhaustion, and the single recovery rule.

### SIXTH DEFENSE
### (Lack of Standing)

To the extent that Plaintiffs were not the sole and total owners of all substantial rights in the Asserted Patent as of the filing date of the Complaint, Plaintiffs lack standing to bring one or more claims in this lawsuit. For example, Celerity has failed to provide evidence that it is the exclusive licensee of the Asserted Patent. Thus, on information and belief, Celerity is a non-exclusive licensee who does not have standing to pursue claims of alleged patent infringement. In a similar vein, ATL has failed to provide evidence that it is the owner of the Asserted Patent. Thus, on information and belief, ATL does not have the right to file suit for infringement as a "patentee" under Title 35 of the patent statute.

### SEVENTH DEFENSE
### (Equitable Bars)

Plaintiffs' claims are barred in whole or in part by the doctrines of waiver, estoppel, laches, prosecution laches, and/or other equitable doctrines, including inequitable conduct during prosecution of the Asserted Patent before the U.S. Patent and Trademark Office.

### EIGHTH DEFENSE
### (Statute of Limitations)

Any claim by Plaintiffs for damages is limited by 35 U.S.C. §§ 252, 286, 287, or 307. Plaintiffs are barred by 35 U.S.C. § 288 from recovering costs associated with this action.

### NINTH DEFENSE
### (Statutory Limitation)

To the extent certain equipment accused of infringing the Asserted Patent are used by and/or manufactured for the United States Government, Plaintiffs' claims involving AT&T with respect to such equipment may not be pursued in this Court and are subject to other limitations pursuant to 28 U.S.C. § 1498.

**TENTH DEFENSE**
**(Commitment to License)**

Plaintiffs' claims for relief, including but not limited to injunctive and declaratory relief, are limited and/or barred by their commitment to license the Asserted Patent pursuant to the applicable standard setting organizations' intellectual property right policies, including without limitation requirements related to licensing intellectual property on fair, reasonable and, and non-discriminatory terms.

**ELEVENTH DEFENSE**
**(Failure to Negotiate in Good Faith)**

Plaintiffs failed to negotiate with AT&T in good faith.

**TWELFTH DEFENSE**
**(No Exceptional Case)**

Plaintiffs cannot prove that this is an exceptional case justifying award of attorney fees against AT&T pursuant to 35 U.S.C. § 285.

**THIRTEENTH DEFENSE**
**(Ensnarement)**

Plaintiffs cannot assert the claims of the Asserted Patent under the doctrine of equivalents to cover the accused products because such an asserted scope of equivalency would encompass or ensnare the prior art.

**FOURTEENTH DEFENSE**
**(Failure to Satisfy a Condition Precedent)**

Plaintiffs' claims are barred in whole or in part by their failure to satisfy a condition precedent.

**FIFTEENTH DEFENSE**
**(Limitation on Damages - Marking)**

Plaintiffs' claims for damages are barred, in whole or in part, by 35 U.S.C. §§ 286, 287, and/or 288. Plaintiffs have failed to adequately plead compliance with the patent marking statute,

35 U.S.C. § 287(a). On information and belief, for example, ASUSTek Computer Inc. ("ASUS") has at all relevant times been a licensee of the Asserted Patent and has failed to mark its products in compliance with the patent marking statute, so Plaintiffs cannot rely on marking as a basis to recover pre-suit damages.

### SIXTEENTH DEFENSE
### (Failure to Join an Indispensable Party)

Plaintiffs' claims should be dismissed for their failure to join an indispensable party, including at least ASUS.[3] The '359 patent was assigned from ASUS to ATL for $1.00 "and other good and valuable consideration." On information and belief, the transfer price was set to $1.00 because the assignment agreements also included a provision wherein ASUS would share in the revenue from any recovery Plaintiffs obtain in this case, making ASUS a real party in interest retaining substantial rights and thus an indispensable party that must be joined.

### AT&T'S COUNTERCLAIMS

Defendant-Counterclaim Plaintiffs AT&T Corp., AT&T Mobility LLC, AT&T Mobility II LLC, and AT&T Services, Inc. (collectively, "AT&T" or "Defendants"), by and through their undersigned counsel, bring the following counterclaims against Plaintiffs-Counterclaim Defendants ASUS Technology Licensing Inc. ("ATL") and Celerity IP, LLC ("Celerity"), and the following third-party complaint against Third-Party Defendant ASUSTek Computer Inc. ("ASUS" and collectively "Counterclaim Defendants"). AT&T alleges as follows:

1.      The counterclaims arise under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States set forth in Title 35 of the

---

[3] AT&T pleads this defense to the extent ASUSTek Computer Inc. contests this Court's jurisdiction over the counterclaims pled herein or otherwise refuses and/or is unable to be joined as a party to this action.

United States Code and in Title 37 of the Code of Federal Regulations.

2.     AT&T Corp. is a corporation organized and existing under the laws of the state of New York, with a principal place of business at One AT&T Way, Bedminster, New Jersey, 07921-0752.

3.     AT&T Mobility LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319.

4.     AT&T Mobility II LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319.

5.     AT&T Services, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 208 South Akard Street, Dallas, Texas 75202.

6.     By their Complaint, Plaintiff-Counterclaim Defendant ATL is a Taiwanese corporation, with its principal place of business located at No. 115, Li-De Rd., Beitou District, Taipei, Taiwan R.O.C., and Plaintiff-Counterclaim Defendant Celerity is a limited liability company organized and existing under the laws of Texas, with its principal place of business located at 7160 Dallas Parkway, Suite 235, Plano, Texas 75024.

7.     Third-Party Defendant ASUS is a publicly owned corporation organized under the laws of Taiwan, with its principal place of business at No. 15, Li-Teh Rd., Beitou District, Taipei City 112, Taiwan.

8.     This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1367 and 2201(a). This Court has personal jurisdiction over Counterclaim Defendants. Celerity is a

limited liability company organized under the laws of Texas and with its principal place of business in Texas, meaning that it is subject to general personal jurisdiction in Texas. ATL and Celerity have consented to venue in this district by bringing this action against AT&T, and thus venue for AT&T's counterclaims is proper in this district. ASUS granted Celerity, a Texas entity, rights as the exclusive licensing agent of its patents. ASUS necessarily understood that negotiations by Celerity would take place in Texas, and that licensing agreements, if reached, would be signed in Texas. Further, each of the Counterclaim Defendants has committed acts within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Counterclaim Defendants would not offend traditional notions of fair play and substantial justice. For example, Counterclaim Defendants ATL and ASUS, through their representative and agent in the Eastern District of Texas, Counterclaim Defendant Celerity, contacted AT&T regarding the ASUS patent portfolio, and engaged in the bad faith negotiation tactics described below. Further, the Counterclaim Defendants, through Celerity, regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue in this District and the State of Texas.

9.      ATL and Celerity have alleged that venue is proper in this District under 28 U.S.C. §§ 1391 and/or 1400 and Counterclaim Plaintiffs do not dispute that allegation for purposes of this litigation. As to ASUS, venue is proper as to a foreign defendant in any district under 28 U.S.C. §§ 1391 and/or 1400.

## A. ETSI, the ETSI IPR Policy, and the FRAND Commitment

10.      The European Telecommunications Standards Institute (ETSI) is a standard development organization (SDO) that promulgates globally-accepted standards for the telecommunications industry. ETSI has more than 900 members from more than 60 countries. In

1998, ETSI and other SDOs founded and became organizational partners of the Third Generation Partnership Project (3GPP). 3GPP created the technical specifications for 3G, 4G, and 5G.

11.     Frequently, ETSI members own patents essential to technical specifications promulgated by 3GPP. ETSI has developed an Intellectual Property Rights (IPR) Policy regarding the licensing of those patents. The IPR Policy is governed by the laws of France.

12.     Clause 6.1 of the ETSI IPR Policy states: "When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licences on fair, reasonable, and non-discriminatory ('FRAND') terms and conditions under such IPR[.]"

13.     Section 15.6 of the ETSI IPR Policy defines the term "ESSENTIAL" to mean that "it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR."

14.     ETSI requests that patent holders publicly declare their licensing positions with respect to essential patents by submitting an IPR Information Statement and Licensing Declaration. A form Declaration is attached to the IPR Policy, and is contractual in nature.

15.     On information and belief, ASUS and/or ATL have submitted one or more IPR Information Statement and Licensing Declarations identifying patents in the ASUS portfolio that ASUS and/or ATL view as potentially essential to one or more of the 3G, 4G, and 5G standards. These declarations state: "the Declarant and/or its AFFILIATES are (1) prepared to grant irrevocable licences under this/these IPR(s) on terms and conditions which are in accordance with

Clause 6.1 of the ETSI IPR Policy; and (2) will comply with Clause 6.1bis of the ETSI IPR Policy."

16.    Clause 6.1bis of the ETSI IPR Policy states that "FRAND licensing undertakings made pursuant to Clause 6 shall be interpreted as encumbrances that bind all successors-in-interest," and "any Declarant who has submitted a FRAND undertaking according to the POLICY who transfers ownership of ESSENTIAL IPR that is subject to such undertaking shall include appropriate provisions in the relevant transfer documents to ensure that the undertaking is binding on the transferee and that the transferee will similarly include appropriate provisions in the event of future transfers with the goal of binding all successors-in-interest. The undertaking shall be interpreted as binding on successors-in-interest regardless of whether such provisions are included in the relevant transfer documents."

**B. The Parties' Licensing Discussions**

17.    On August 25, 2022, Celerity contacted AT&T indicating that it had been retained by an entity named Innovative Sonic Limited ("Innovative Sonic") to act as an "exclusive agent" to license a portfolio of patents originally developed by ASUS and its employees and allegedly declared as essential to one or more of the 3G, 4G, and 5G standards (the "Innovative Sonic Portfolio"). Celerity requested AT&T's availability to "begin licensing discussions" regarding this Portfolio. In addition, and without explaining the need for an NDA or identifying any alleged-to-be confidential information that Celerity needed to share with AT&T, Celerity attached a draft NDA and indicated its position that "it would be best" to execute the NDA as a prerequisite to substantive discussions.

18.    On September 22, 2022, Celerity contacted AT&T indicating that it had also been retained by ASUS to license a second portfolio of patents also originally developed by ASUS and its employees and also allegedly declared as essential to one or more of the 3G, 4G, and 5G

standards (the "ASUS Portfolio"). Again, Celerity requested AT&T's availability to "begin licensing discussions" regarding the portfolios. And again, without explaining the need for an NDA or identifying any alleged-to-be confidential information that Celerity needed to share with AT&T, Celerity attached a draft NDA and indicated its position that "it would be best" to execute the NDA as a prerequisite to substantive discussions.

19.     Celerity's second letter claimed that although the Innovative Sonic Portfolio and the ASUS Portfolio were two "separate and distinct" portfolios of patents developed by ASUS and declared-essential to the 3G, 4G, and 5G standards, Celerity sought to negotiate a license for AT&T to both portfolios at the same time.

20.     On October 7, 2022, AT&T promptly responded to Celerity's request. To advance discussions, AT&T requested further information regarding Celerity's position that AT&T needed a license to the ASUS and Innovative Sonic Portfolios, including an identification of the allegedly infringing products, the patents that Celerity contended were infringed, and claim charts showing how each accused product allegedly infringed each element of each identified patent. AT&T also explained that an NDA was not necessary because "there [is] no confidential information that needs to be protected" at this time and nor had Celerity identified any. AT&T further explained that it could not enter into an NDA with Celerity—even though Celerity failed to identify any alleged-to-be confidential information—because it was important that AT&T be permitted to share information regarding Celerity's claims of infringement with its vendors whose products were implicated by Celerity's infringement allegations.

21.     On October 17, 2023, Celerity responded.  While Celerity noted AT&T's "concern about sharing information with the suppliers," Celerity did not offer any viable mechanism whereby AT&T could share information related to Celerity's allegations. Instead, Celerity again

attached its "standard NDA," and encouraged AT&T to sign.

22.     Celerity did not contact AT&T again until January 23, 2023. In this response, Celerity again noted AT&T's "concern about being able to provide information to your suppliers" but failed to provide any viable mechanism whereby AT&T could share information related to Celerity's allegations with its suppliers. Celerity also indicated that it considered its claim charts to be confidential (without ever identifying any alleged-to-be confidential information) and continued to insist on an NDA as a prerequisite to further discussions, particularly if AT&T was to share information related to Celerity's allegations with its suppliers. In addition, Celerity also offered to make a "view only" "data room" available without NDA but never specifically identified the information that would be made available for "view only" access or agreed that AT&T's suppliers would be permitted access to the information in the "data room."

23.     On February 17, 2023 AT&T responded and again noted that its wireless services, including 5G, "are enabled by products that we purchase from our vendors" which was why it was important that AT&T be permitted to share information related to Celerity's allegations with its suppliers. AT&T also explained that it "relies on its vendors not only in support of its wireless services but also in evaluating offers to license patents that allegedly relate to its products." AT&T further explained that if any of its "vendors are unlicensed and Celerity is not already in direct discussions with them, please identify them so that we can ask them to contact Celerity to discuss your license offer." AT&T additionally explained that "Celerity's proposed NDA would impose restrictions on how the vendors may respond to an infringement allegation, which is contrary to our contractual obligations to them" and indicated that Celerity's suggestion "of allowing [AT&T] to view the claim charts without an NDA belies Celerity's position that the information is confidential." Regardless, AT&T indicated its continued to willingness to "initiate discussions"

and included AT&T personnel who would "lead discussions over the business terms." Celerity did not respond to this correspondence. Celerity also did not engage with AT&T's vendors, did not identify the alleged-to-be unlicensed vendors, did not identify any alleged-to-be confidential information that supposedly required the entry of an NDA, and otherwise failed to substantively respond to any of AT&T's requests.

24.     AT&T never accessed Celerity's "data room" and has no knowledge of what information, if any, was contained therein.

25.     Instead of engaging with AT&T, on October 19, 2023, shortly after ASUS assigned several patents (including the Asserted Patent) from its portfolio to ATL, and after sitting silent without response to AT&T's February 17, 2023 correspondence, Celerity and ATL filed the Complaint.

26.     On information and belief, ASUS is the current or former assignee to one or more of the patents in both the ASUS Portfolio and the Innovative Sonic Portfolio.

27.     On information and belief, ASUS will share in any revenue Celerity and/or ATL obtain from any license of or lawsuit asserting the ASUS Portfolio patents.

28.     On information and belief, ASUS, Celerity, and ATL, were working in concert in the negotiation with AT&T.

29.     Counterclaim Defendants failed to negotiate in good faith towards a FRAND license to their portfolio of allegedly essential patents and/or the Asserted Patent.  For example, Celerity and ATL filed this lawsuit seeking "all equitable relief," which may include an injunction, before making a FRAND offer (or any offer) to their allegedly essential patents and/or the Asserted Patent. Counterclaim Defendants also failed to provide AT&T with the information it requested, failed to permit AT&T to involve its vendors in the discussions, and instead insisted on a

superfluous NDA without establishing the presence of any confidential information.

30.     In view of the foregoing, there exists an actual and justiciable controversy between the parties with respect to whether Counterclaim Defendants satisfied their obligation to negotiate in good faith for a FRAND license to their portfolio of allegedly essential patents and/or the Asserted Patent.

31.     Through the conduct described above, Counterclaim Defendants breached the obligation to negotiate in good faith.

32.     In addition, by their Complaint, Plaintiffs purport to assert a claim against AT&T for infringement of the Asserted Patent.

33.     AT&T denies that it directly or indirectly infringes any valid and enforceable claim of the Asserted Patent. In view of the foregoing, there exists and actual and justiciable controversy between the parties with respect to the alleged infringement of the Asserted Patent.

## FIRST COUNTERCLAIM
### (Declaratory Relief Regarding Noninfringement of U.S. Patent No. 10,951,359)

34.     AT&T restates and incorporates by reference each of the allegations of its Counterclaims from paragraphs 1–33.

35.     AT&T seeks and is entitled to a declaration that AT&T does not directly or indirectly infringe any valid and enforceable claims in the '359 Patent, either literally or under the doctrine of equivalents, and that it is not liable for damages or injunctive relief based on any claim of the '359 Patent. AT&T does not operate a wireless node in the United States that, for example, (i) transmits a signal indicating at least a first duration and a bit map, wherein the first duration is time duration of a control resource set (CORESET), and wherein the bit map includes a set of bit positions, where each bit position has a value of one or zero and each bit position with the value of one indicates a starting Orthogonal Frequency Division Multiplexing (OFDM) symbol of a

monitoring occasion of the CORESET within a slot, or that (ii) does not allow to transmit the signal such that an interval between any two bit positions with the value of one in the set of bit positions in the bit map is smaller than the first duration.

36.     Accordingly, there exists an actual and justiciable controversy with respect to infringement of the '359 Patent.

37.     A judicial declaration concerning these matters is necessary and appropriate so that AT&T can ascertain its rights regarding the '359 Patent.

**SECOND COUNTERCLAIM**
**(Breach of Obligation to Negotiate in Good Faith)**

38.     AT&T restates and incorporates by reference each of the allegations of its Counterclaims from paragraphs 1–37.

39.     French law governs the ETSI FRAND commitment, and under French law, once Counterclaim Defendants, including ASUS, commenced negotiations for itself and/or as a licensing agent on behalf of ASUS with AT&T, ASUS, ATL, and Celerity were obligated to negotiate in good faith.

40.     Counterclaim Defendants have failed to negotiate in good faith with AT&T and thus breached their obligation for the reasons described above.

41.     Counterclaim Defendants' conduct demonstrates that they did not seriously engage in discussions with AT&T with the aim of concluding an agreement, and instead filed this case without engaging in good faith negotiations.

42.     Counterclaim Defendants' failure to negotiate in good faith constitutes a breach of their obligations to AT&T.

43.     As a result of this breach, AT&T has been injured in its business or property, including AT&T's costs and expenses in pursuing futile discussions with Counterclaim

Defendants, in an amount to be determined at trial.

44.     In addition to other forms of relief, there is a dispute between AT&T and Counterclaim Defendants concerning whether Counterclaim Defendants have complied with their obligation to negotiate in good faith, and this controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Counterclaim Defendants have not complied with their obligation to act in good faith during their negotiations with AT&T with respect to FRAND terms for a license to the parties' essential patents.

## DEMAND FOR JURY TRIAL

AT&T hereby demands a jury trial pursuant to Federal Rule of Civil Procedure 38 on all issues triable of right to a jury.

## FEES AND COSTS

To the extent that Plaintiffs' patent infringement case supports a finding that this is an "exceptional case," an award of attorneys' fees and costs to AT&T is justified pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

Wherefore, AT&T respectfully request that this Court enter judgment in its favor and grant the following relief:

a.     Declare that AT&T has not infringed any claim of the Asserted Patent, contributed to infringement of any claim of the Asserted Patent, and/or induced the infringement of any claim of the Asserted Patent;

b.     Declare that Counterclaim Defendants have failed to satisfy their obligation to negotiate in good faith;

c.     Award AT&T damages resulting from Counterclaim Defendants' breach of their obligation to negotiate in good faith;

d.      Award no damages or equitable relief (including injunction) to Plaintiffs for alleged

infringement of the Asserted Patent;

e.      Award attorneys' fees to AT&T pursuant to 35 U.S.C. § 285 or as otherwise

permitted by law; and

f.      Award to AT&T such other costs and further relief as the Court deems just and

proper.

Dated: December 26, 2023

Respectfully submitted,

/s/ *Nicholas Mathews*

Nicholas Mathews (Lead Counsel)
Texas State Bar No. 24085457
nmathews@McKoolSmith.com
Warren Lipschitz
Texas State Bar No. 24078867
wlipschitz@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Joshua Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
Kevin Hess
Texas State Bar No. 24087717
khess@McKoolSmith.com
Matthew T. Cameron
Texas State Bar No. 24097451
mcameron@McKoolSmith.com
**MCKOOL SMITH, P.C.**
303 Colorado Street, Suite 2100
Austin, TX 78701
Telephone: (512) 692-8752
Telecopier: (512) 692-8744

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@McKoolSmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

Deron R. Dacus
State Bar No. 00790553
ddacus@dacusfirm.com
**THE DACUS FIRM, PC**
821 ESE Loop 323, Suite 430

Tyler, TX 75701
Telephone: (903)705-1117
Facsimile: (903) 581-2543

**COUNSEL FOR AT&T CORP., AT&T MOBILITY LLC, AT&T MOBILITY II LLC, AND AT&T SERVICES, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 26, 2023, I caused a true and correct copy of Defendants'

Answer, Affirmative Defenses, and Counterclaims to be served on all counsel of record via the

Court's ECF system.

/s/ *Nicholas Matthews*
Nicholas Mathews