## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **ASUS TECHNOLOGY LICENSING INC. AND CELERITY IP, LLC,** | |
| Plaintiffs, | Civil Action No. 2:23-cv-486 LEAD CASE |
| v. | **JURY TRIAL** |
| **AT&T CORP., AT&T MOBILITY LLC, AT&T MOBILITY II LLC, AND AT&T SERVICES, INC.,** | |
| Defendants. | |
| **ERICSSON INC., NOKIA CORPORATION OF AMERICA,** | |
| Intervenors. | |
| **ASUS TECHNOLOGY LICENSING INC. AND CELERITY IP, LLC,** | |
| Plaintiffs, | Civil Action No. 2:23-cv-487 |
| v. | **JURY TRIAL** |
| **T-MOBILE USA, INC.,** | |
| Defendant. | |
| **ERICSSON INC., NOKIA CORPORATION OF AMERICA,** | |
| Intervenors. | |

| | |
|---|---|
| **ASUS TECHNOLOGY LICENSING INC. AND CELERITY IP, LLC,** | |
| Plaintiffs, | Civil Action No. 2:23-cv-488 |
| v. | **JURY TRIAL** |
| **CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS,** | |
| Defendant. | |
| **ERICSSON INC., NOKIA CORPORATION OF AMERICA,** | |
| Intervenors. | |
| **INNOVATIVE SONIC LIMITED AND CELERITY IP, LLC,** | |
| Plaintiffs, | Civil Action No. 2:23-cv-489 |
| v. | **JURY TRIAL** |
| **AT&T CORP., AT&T MOBILITY LLC, AT&T MOBILITY II LLC, AND AT&T SERVICES, INC.,** | |
| Defendants. | |
| **ERICSSON INC., NOKIA CORPORATION OF AMERICA,** | |
| Intervenors. | |

| | |
|---|---|
| **INNOVATIVE SONIC LIMITED AND CELERITY IP, LLC**, | |
| Plaintiffs, | Civil Action No. 2:23-cv-490 |
| v. | **JURY TRIAL** |
| **T-MOBILE USA, INC.,** | |
| Defendant. | |
| **ERICSSON INC.,** **NOKIA CORPORATION OF AMERICA,** | |
| Intervenors. | |
| **INNOVATIVE SONIC LIMITED AND CELERITY IP, LLC**, | |
| Plaintiffs, | Civil Action No. 2:23-cv-491 |
| v. | **JURY TRIAL** |
| **CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS,** | |
| Defendant. | |
| **ERICSSON INC.,** **NOKIA CORPORATION OF AMERICA,** | |
| Intervenors. | |

**PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF (CASE NOS. -486, -487, -488)**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    The '868 Patent ............................................................................................................... 1

    A.    No Further Construction is Necessary for the "Medium Access Control (MAC) signaling" Terms ................................................................................ 1

II.   The '402 Patent ............................................................................................................... 3

    A.    "Refined beam" is Not Indefinite .................................................................... 3

III.  The '754 Patent ............................................................................................................... 5

    A.    "Not Allowed" is Not Indefinite ...................................................................... 5

IV.   The '359 Patent ............................................................................................................... 6

    A.    "Interval" Should Be Construed As "distance between two bit positions" ............... 6

    B.    Defendants' Attempt to Impose an Order of Operations on the Elements of the Claims should be Rejected ............................................................................ 8

    C.    Claim 4 of The '359 Patent Does Not Require Further Construction ....................... 9

    D.    Claim 22 of The '359 Patent Is Not A Means-Plus-Function Claim ........................ 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
    632 F.3d 1246 (Fed. Cir. 2011) ................................................................................................9

*CUPP Computing AS v. Trend Micro Inc.*,
    53 F.4th 1376 (Fed. Cir. 2022) ...............................................................................................3

*Falana v. Kent State Univ.*,
    669 F.3d 1349 (Fed. Cir. 2012) ...............................................................................................7

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l*,
    222 F.3d 951 (Fed. Cir. 2000) .................................................................................................3

*Hytera Communications Co. Ltd. v. Motorola Solutions, Inc.*,
    841 F. App'x. 210 (Fed. Cir. 2021) .........................................................................................8

*Interactive Gift Exp. Inc. v. Compuserve Inc.*,
    256 F.3d 1323 (Fed. Cir. 2001) ...............................................................................................8

*Modine Mfg. Co. v. United States International Trade Comm'n*,
    75 F.3d 1545 (Fed.Cir.1996) ..................................................................................................1

*Neville v. Foundation Constructors, Inc.*,
    972 F.3d 1350 (Fed. Cir. 2020) ...............................................................................................8

*Osram GmbH v. Int'l Trade Comm'n*,
    505 F.3d 1351 (Fed. Cir. 2007) ...............................................................................................1

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ...............................................................................................7

*Presidio Components, Inc. v. American Technical Ceramics Corp.*,
    875 F.3d 1369 (Fed. Cir. 2017) ...............................................................................................4

*Realtime Data, LLC v. Rackspace US, Inc.*,
    2017 WL 2590195 (E.D. Tex. June 14, 2017) .......................................................................10

*Southwall Techs., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) .................................................................................................3

*St. Isidore Rsch., LLC v. Comerica Inc.*,
    2016 WL 4988246 (E.D. Tex. Sept. 19, 2016) ......................................................................10

*Standard Oil Co. v. Am. Cyanamid Co.*,
    774 F.2d 448 (Fed. Cir. 1985) .................................................................................................3

I.     **The '868 Patent**

    A.     **No Further Construction is Necessary for the "Medium Access Control (MAC) signaling" Terms**

Defendants do not dispute that the claims require "Medium Access Control (MAC) signaling" that is transmitted to user equipment.  Defendants do not dispute that their proposed construction of "Medium Access Control (MAC) signaling" would exclude the only known implementation of transmitting MAC signals to user equipment at the time of invention (via transmission on physical channels implemented at the PHY layer).  Defendants do not dispute that their proposed construction would exclude disclosed embodiments.[1]  The analysis can end there—Defendants' proposed construction fails.  *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (reversing construction and noting "[t]his conclusion is reinforced by the undisputed fact that the [construction] would exclude the . . . products that the patents were designed to cover.");  *Modine Mfg. Co. v. United States International Trade Comm'n*, 75 F.3d 1545, 1550 (Fed.Cir.1996) ("a claim interpretation that would exclude the inventor's device is rarely the correct interpretation").

Tellingly, Defendants completely ignore their positions in their IPR petition on the '868 Patent.  There, Defendants argued that a signal which was transmitted via physical transmission was the claimed MAC signaling.  Dkt. 333 at 4-5.  Defendants' IPR petition failed, but it is not surprising that the only MAC signaling Defendants could point to in the prior art was transmitted via physical signal, that is how all MAC signaling is transmitted.

In arguing to the contrary, Defendants mischaracterize Plaintiffs' positions, and rely on a tortured reading of the prosecution history.

---

[1] Defendants argue in a conclusory manner that the Medium Access Control (MAC) protocol specification, TS 36.321 V13.0.0, is not an exemplary embodiment.  Opp. at 5.  Defendants are wrong.  The '868 Patent explains that "the exemplary wireless communication systems devices described below may be designed to support," among others, this technical specification.  '868 Pat. 2:57-3:11.  But in any event, Defendants ignore that their proposed construction would omit all other exemplary embodiments as well.

First, Defendants argue that Plaintiffs supposedly "conced[e] the relevant point" which Defendants contend is that "a MAC signal is different from a physical signal[.]"  Dkt. 366 (Opp.) at 1 (citing Plaintiffs' Opening Brief).  Defendants are wrong.  It is irrelevant (and undisputed) that MAC signals are different from physical signals, the heart of the parties' dispute is whether MAC signals are *transmitted* via the physical layer.  On this point, Defendants intentionally close crop the remainder of the quote from Plaintiffs' brief, which in full reads: "If Defendants wanted to show fidelity to the actual discussion in the prosecution history they would propose that a MAC signal is different from a physical signal *but relies on the PHY layer for transmission*."  Dkt. 333 at 7.  Nowhere do Defendants dispute that MAC signals rely on the PHY layer for transmission, and nowhere do Defendants dispute that their proposed construction is at odds with this fundamental fact.

Second, Defendants argue that prosecution history disclaimer applies because "Applicant sought to distinguish Li based on Paragraph [0155]" and, according to Defendants, "Paragraph [0155] of Li contradicts Plaintiffs' position."  Opp. at 2-3.  Defendants are wrong, and provide no explanation for their position that Paragraph [0155] of Li contradicts Plaintiffs' position.  Paragraph [0155] of Li, and its reference to Figure 15, makes clear that, as Plaintiffs explained in their Opening Brief, the "first signal" of Li that Applicants were distinguishing is a cell specific reference signal (CRS).  Defendants do not dispute this point.  Cell specific reference signals originate at the PHY layer, meaning that Applicant's arguments distinguishing Li are consistent with Plaintiffs' construction—that MAC signaling does not originate at the PHY layer, but can be carried over the PHY layer.

Defendants do not, and cannot, dispute that cell reference signals originate at the PHY layer. Defendants only argue that "[n]othing in Li limits these CRS 1605 reference signals, such as those transmitted over the 'data' channel in Figure 16 to those which 'originate at' the '(PHY) layer.'"  Opp. at 4.  But Defendants provide no support for their apparent contention that CRS signals can originate anywhere other than the PHY layer.

Defendants' cases are therefore inapposite.  Unlike in Defendants' cited cases, the purported disclaimer here is far from "clear and unmistakable" as is required.  *CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376, 1382 (Fed. Cir. 2022); *see also Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 453 (Fed. Cir. 1985) (applicant stated prior art disclosed "metallic copper which is outside [the] claims," thus disclaiming metallic copper); *Hockerson-Halberstadt, Inc. v. Avia Group Int'l*, 222 F.3d 951, 956 (Fed. Cir. 2000) (applicant stated its invention provided a "narrower groove" than specific prior art, thus disclaiming wider grooves); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) (applicant amended the claims to overcome a rejection, explaining that the amendment narrowed the claims to a "one-step" process whereas the prior art used a "two-step" process, thus disclaiming two step processes).  Defendants' proposed construction should be rejected.

## II.    The '402 Patent

### A.    "Refined beam" is Not Indefinite

A POSA would understand that a "refined beam" is a beam that has been adjusted to improve beam quality.  In the dependent claims of the '402 Patent, "refined beam" refers to refinement of the first beam indicated by the beam related information transmitted as part of the control signal.

Defendants' assertion that neither the specification nor extrinsic evidence clarifies what makes one beam a "refined beam" of another beam is wrong.  Opp. at 9.  Both the specification and Dr. Hansen's testimony show that a POSA would recognize "refined beam" to mean a beam that has been adjusted to improve beam quality.  *See* '402 Pat. 7:15-24 ("For example, the direction of base station beam(s) used to transmit the aperiodic beam reference signal could be slightly adjusted compared to the periodic one so that the beam quality could be ***improved, refined, or fine-tuned.***"); Dkt. 333-09 (Hansen Decl.) ¶ 68 (describing the ways in which a beam may be refined).  Defendants do not dispute that the refinement is a species of beam adjustment.  Instead, Defendants argue that the term is indefinite because a POSA would not be able to distinguish between the "refined," "improved," and

"fine-tuned" species of beam adjustment. Opp. at 9. But a POSA reading the specification would understand that the specification uses "improved," "fine-tuned," and "refined" interchangeably. *See* '402 Pat. 7:15-24 (". . . so that beam quality could be improved, refined, *or* fine-tuned.").

Defendants' reliance on Dr. Hansen's enumeration of beam refinement methods is also misplaced. First, Defendants do not dispute that beam refinement was a method of beam management that was known and practiced by POSAs at the time of the invention. Dkt. 366-16 (3GPP TR 38.912) at 22; *see also Presidio Components, Inc. v. American Technical Ceramics Corp.*, 875 F.3d 1369, 1376 (Fed. Cir. 2017) (affirming rejection of indefiniteness challenge because "[a] patent need not explicitly include information that is already well known in the art."). Second, none of Dr. Hansen's "interpretations" conflict with Plaintiffs' construction. For instance, a "'refined beam' [] narrower than the claimed 'first beam' and entirely confined within the same spatial domain as the 'first beam'" could be a valid method by which a beam is adjusted to improve beam quality. *See* Opp. at 7. Indeed, the very fact that Dr. Hansen can identify multiple methods describing ***how*** a beam may be refined is evidence that a POSA would understand ***what*** a refined beam is.

In the context of the dependent claims, a POSA would also understand "refined beam" to refer to a refinement of the first beam indicated by the beam-control information contained in the control signal. This interpretation reflects the plain language of the claims. For instance, claim 3 states "wherein the beam related-information indicates a first beam . . . the reference signal for beam measurement is transmitted on at least a refined beam of the first beam." '402 Pat. cl. 3. Defendants do not dispute that Dr. Hansen admitted that this would be the logical reading of the claim language. *See* Dkt. 333 at 9 (citing Dkt. 333-9 (Hansen Tr.) at 152:15-153:12).

Defendants also argue that Plaintiffs' interpretation renders claims 3 and 14 identical to claims 2 and 13 and is therefore barred by claim differentiation. Opp. at 9. Defendants misread the claims. While the reference signal in claims 2 and 13 is transmitted on the same beam that is indicated by the

beam-related information, the reference signal in claims 3 and 14 is transmitted on a refined, or adjusted, version of the indicated beam.  The "refined beam" terms are therefore not indefinite.

## III.    The '754 Patent

### A.    "Not Allowed" is Not Indefinite

Defendants do not dispute that a POSA would interpret "not allowed" to mean exactly what it says: the network node, after transmitting a first RRC message to the UE with a QFI configuration indicating QFI field is present, **may not** send subsequent RRC messages that reconfigure the QFI configuration for the default DRB to indicate no presence of the QFI field.  Defendants also do not dispute that the specification reinforces this interpretation.  Instead, Defendants argue that the term is indefinite because (1) a POSA, reading the claims, would not understand what a network node "is and is not allowed to do" and (2) it would render dependent claims 2 and 7 meaningless in light of the independent claims.  Opp. at 11, 13.  Both arguments fail.

First, Defendants acknowledge that independent claim 1 requires the network node to set and send the QFI configuration via RRC messages, but suggest that the language of dependent claim 2 confusingly requires the UE, rather than the network node, to set the QFI configuration.  Opp. at 12. Defendants misinterpret the claims.  Claim 2 states that "the network node is not allowed to transmit a second RRC message to the UE for reconfiguring the QFI configuration . . . ."  '754 Pat. cl. 2.  A POSA would understand "second RRC message" to mean that the network node in claim 2 possesses the same functionality as the network node in claim 1: the ability to send RRC messages that set the QFI configuration.  The purpose of claim 2 is to prevent the network node from changing the QFI configuration after it has been set to indicate the presence of the QFI field.  Claims 1 and 2 are consistent in that the network node, not the UE, is capable of setting and sending an RRC message that reconfigures the QFI configuration.  Under claim 1, a network node sends a first RRC message with a DRB configuration that includes a QFI configuration always set to a value indicating the QFI

field is present.  And under dependent claim 2, the network node may not send subsequent RRC messages that change the QFI configuration to indicate the QFI field is not present.  Thus, a POSA reading the claims would know exactly what a network node "is or is not allowed to do."

Second, Defendants argue that dependent claims 2 and 7 are meaningless because independent claims 1 and 6 "preclude[] the possibility of the QFI configuration being set to a value indicating no QFI field."  Opp. at 13.  This is also incorrect.  Claims 1 and 6 explicitly describe a **_first RRC message_** containing a QFI configuration that is always set to indicate the QFI field is present.  Claims 2 and 7 are instead directed to **_subsequent RRC messages_**, and require that those messages do not reconfigure the QFI configuration to indicate no presence of the QFI field.  Claims 2 and 7 are thereby distinct from claims 1 and 6.  Defendants' argument that Plaintiffs' IPR response "highlights the superfluous nature of Claim 2" fails for the same reasons.  Opp. at 14.  The response clarifies that claim 1's requirement that the QFI configuration is always set to a value indicating presence of the QFI field applies to "the [first] RRC message," not all RRC messages.  Ex. 1, ('754 POPR) at 26.

Defendants' proposed construction of "not allowed" as indefinite should thus be rejected.

## IV.    The '359 Patent

### A.    "Interval" Should Be Construed As "distance between two bit positions"

Defendants argue that Plaintiffs' construction "ignores the express definitional statements in the specification and appears to create unresolvable problems for the dependent claims."  Opp. at 15-16.  Defendants are wrong.

**_First_**, Plaintiffs' proposed construction, not Defendants', tracks the specification.  As detailed in Plaintiffs' opening brief, the '359 Patent specification and the provisional application incorporated by reference into the '359 Patent both expressly teach that "interval" refers to a "distance between two bit position," and frequently use "interval" and "distance" interchangeably.  *See, e.g.*, '359 Pat. 16:34-40 ("The **_interval (or distance)_** between each bit position…"); *see also* Dkt. 333 at 15-17 (collecting cites).

Instead of using the "distance between two bit positions" definition from the '359 Patent specification, Defendants argue that the Court should adopt two definitions taken from exemplary embodiments in the specification: the difference between two bit positions or the number of bits between two bit positions.  This is an attempt to limit the claims to examples in the specification, which should be rejected.  *See Falana v. Kent State Univ.*, 669 F.3d 1349, 1355 (Fed. Cir. 2012) ("[The Federal Circuit] has 'cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.'").  Defendants further argue that their proposed construction is correct because it "exactly recites the two meanings of the term as provided in" dependent claims 9/19 and 10/20.  Opp. at 17.  Contrary to Defendants' argument, the presence of dependent claims that add "the difference between two bit positions" and "the number of bits between two bit positions" limitations gives rise to a presumption that the limitations are not present in the independent claims. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim").

**Second**, Plaintiffs' proposed construction does not conflict with any dependent claims. Plaintiffs' construction sets forth a general meaning of the term "interval" consistent with the specification's description.  Dependent claims 9/19 and 10/20 specify particular calculations of intervals, which would of course be used to assess infringement of those claims.  But those dependent claims do not define the word "interval" and construing the word based on a narrower restriction present only in certain dependent claims only risks juror confusion at trial.  Defendants fail to explain how or why Plaintiffs' construction would exclude embodiments where the "interval" reflects the "number of bits between" two bits, as in claims 10 and 20.  Thus, Defendants' attempts to limit the independent claims to specific embodiments are inappropriate, and Plaintiffs' construction taught by the '359 Patent specification should be adopted.

**B.    Defendants' Attempt to Impose an Order of Operations on the Elements of the Claims should be Rejected**

Defendants' fail to overcome the presumption that "the steps of a method . . . are not ordinarily construed to require [an order]." *Interactive Gift Exp. Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342-43 (Fed. Cir. 2001). Defendants do not dispute that imposing an order would be illogical because the claim language identifies a single, actionable step: "transmitting a signal indicating at least a first duration and a bit map." *See* Dkt. 333 at 19. The final clause is a condition where the network node is "not allow[ed] to transmit the signal such that an interval between any two bit positions with the value of one . . . in the bit map is smaller than the first duration." *E.g.*, '359 Pat. cl. 1. Defendants' interpretation of the claims would mean that the base station would first perform a transmission and then a "non-transmission" when it can only perform one or the other. Therefore, logic does not require an order; conversely, it dictates that one should **not** be imposed. *Neville v. Foundation Constructors, Inc.*, 972 F.3d 1350, 1357 (Fed. Cir. 2020) ("A claim construction that renders asserted claims facially nonsensical cannot be correct.") (citations omitted).

Defendants' argument that an order is grammatically required by antecedent basis fails for the same reasons. Unlike in *Hytera*, where the claimed method required multiple steps where the use of "a" and "the" provided antecedent basis for each sequential step, the claimed methods here consist of a single, conditional step. 841 F. App'x. 210, 218 (Fed. Cir. 2021). In fact, the use of "a" and "the" in claims 1, 12, and 22 to refer to the same signal undermines Defendants' construction because the same signal cannot be both transmitted and then not transmitted.

Defendants also fail to show that the specification imposes an order. Defendants argue that the "specification provides no alternative embodiment that adjusts [the] prescribed order" shown by the flowcharts in Figures 7 and 8. Opp. at 20. That is incorrect. The specification discloses multiple other embodiments that do not reflect the order of operations in Figures 7 and 8. *See* Dkt. 333 at 20 (citing '359 Pat. 17:8-11 ("In one embodiment, a base station does not configure the UE with a bit

- 8 -

map such that the interval (or distance) between two positions indicating value one in the bit map is smaller than the number")).  The specification thus does not require an order of operations.

### C.    Claim 4 of The '359 Patent Does Not Require Further Construction

Defendants fail to justify their attempt to re-write the claim by adding to it the requirement that the claimed interval be "between any bit position *with a value of 0 or 1.*"

Defendants assert that their proposed construction "adds clarity to an otherwise ambiguous claim term."  Opp. at 21.  In reality, Defendants' construction confuses the scope of the claim, demonstrated by Dr. Hansen's inability to apply Defendants' construction to an exemplary bit map from the '359 Patent specification during his deposition.  *See* Dkt. 333 at 21-22 (citing Dkt. 333-9 (Hansen Tr.) at 69:18-71:3).  Tellingly, Defendants do not attempt to identify any actual ambiguity in the claim language. *See* Opp. at 21-22.  Instead, Defendants' true argument appears to be that their claim construction should be adopted to support their non-infringement position.  However, disputes over whether a claim limitation is performed are not properly resolved at a claim construction hearing.

Defendants claim construction also conflicts with other asserted claims of the '359 Patent. Defendants argue it is "irrelevant" that claim 12 discloses a similar "interval" requirement because claim 4 shares no dependency with claim 12, and argue that because "Defendants' construction here even reuses the same words as in the independent claims" and "other claims already use this same terminology," the "with a value of 0 or 1" limitation should be added to claim 4.  Opp. at 21-22. Defendants are wrong.  "[S]ubstantive differences between the claims," even between claims from related patents or between claims that do not share any dependency, can be a "useful guide in understanding the meaning of particular claim terms."  *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254-55 (Fed. Cir. 2011) (declining to read a limitation into an independent claim term because other independent claims in the patent and claims in a parent patent explicitly recited the limitation at issue, noting that "[r]eading [the limitation] into the term [] would render these additional

modifiers superfluous, which weighs against doing so."). Accordingly, because claims 1 and 12 recited "with the value of one" requirements for the "interval" terms, while claim 4 omitted such a requirement, there is no basis to read in the "with a value of 0 or 1" limitation to claim 4.

### D.    Claim 22 of The '359 Patent Is Not A Means-Plus-Function Claim

Defendants do not overcome the presumption that Section 112(f) does not apply. Defendants argue that claim 22 "provides no structure describing how the processor would [perform the claimed limitation]," or "operate[] with the other claimed components." Opp. at 23. Defendants are wrong. Here, the claim recites a sufficiently definite structure—a program code, memory, and a processor— for performing the claimed function of transmitting/not allowing to transmit a signal.

Defendants only cite *St. Isidore Rsch., LLC v. Comerica Inc.*, 2016 WL 4988246 (E.D. Tex. Sept. 19, 2016) to support their argument. *St. Isidore* is distinguishable. In that case, the claim only referred to the "processors" in purely functional language, and the patent specification did not detail the objectives and operations of the "processor" terms. *See id.* at *14. Here, by contrast, as detailed in Plaintiffs' opening brief, the '359 Patent specification discloses the objectives and operations of the processor and connotes sufficient structural detail to the "processor," "memory," and "code" terms to avoid means-plus function claiming. *See* Dkt. 333 at 25 (excerpting the '359 Patent specification).

Even the *St. Isidore* Court noted that "in many instances, the term 'processor' itself connotes sufficient structure" and that "[t]he Court has typically found 'processor' to connote sufficient structure to avoid the application of § 112, ¶ 6." *Id.* at *14-*15. Tellingly, Defendants do not engage with the many cases from this District holding that "processor" is not a means-plus-function term. *See, e.g.*, *Realtime Data, LLC v. Rackspace US, Inc.*, 2017 WL 2590195, at *17 (E.D. Tex. June 14, 2017) (citing "the numerous precedent from this District finding the term 'processor' is not a means-plus-function term," and collecting such cases). Accordingly, Defendants cannot overcome the presumption that Section 112(f) does not apply, and claim 22 thereby requires no further construction.

DATED: March 12, 2025.

Respectfully submitted,

/s/ *Jason Sheasby (with permission by Robert Christopher Bunt)*
Robert C. Bunt
Texas State Bar No. 00787165
rcbunt@pbatyler.com
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 418
Tyler, Texas 75702
Tel: (903) 531-3535

Jason Sheasby
California State Bar No. 205455
(*pro hac vice*)
jsheasby@irell.com
Rebecca Carson
California State Bar No. 254105
(*pro hac vice*)
rcarson@irell.com
Christopher Abernethy
California State Bar No. 275986
(*pro hac vice*)
cabernethy@irell.com
Tony Rowles
California State Bar No. 301209
(*pro hac vice*)
trowles@irell.com
Benjamin Manzin-Monnin
California State Bar No. 325381
(*pro hac vice*)
bmonnin@irell.com
Jordan Nafekh
California State Bar No. 328151
(*pro hac vice*)
jnafekh@irell.com
Russell Hoover
California State Bar No. 334913
(*pro hac vice*)
rhoover@irell.com
Isabella Chestney
California State Bar No. 347608
(*pro hac vice*)
ichestney@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Tel: (310) 277-1010

M. Jill Bindler
Texas Bar No. 02319600
jbindler@grayreed.com
**GRAY REED & McGRAW, P.C.**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332

**ATTORNEYS FOR PLAINTIFFS ASUS
TECHNOLOGY LICENSING INC.,
INNOVATIVE SONIC LIMITED, AND
CELERITY IP, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on March 12, 2025.

/s/ *Russell Hoover*
Russell Hoover