**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ASUS TECHNOLOGY LICESNING INC. *and* CELERITY IP, LLC, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CASE NO. 2:23-CV-00486-JRG-RSP |
| AT&T ENTERPRISES, LLC, AT&T MOBILITY LLC, AT&T MOBILITY II LLC, *and* AT&T SERVICES INC., | § § § § | (Lead Case) |
| *Defendants*. | § § | |

**MEMORANDUM ORDER**

Before the Court is Defendants' Motion to Exclude Damages Expert Opinions of David Kennedy (the "Motion"). (**Dkt. No. 579**). The motion is fully briefed. (*See* Dkt. Nos. 632, 694, 760).  The Motion was orally argued at the pretrial conference on July 17, 2026 and granted in part, for the reasons more formally set forth below.  Except to the extent granted at the pretrial conference and herein, the Motion is denied.

## I.    LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires trial courts to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert*, 509 U.S. at 592–93 (1993). Such courts are given broad discretion in making Rule 702 admissibility

determinations. *Kumho Tire*, 526 U.S. at 152 ("a judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert's testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under Daubert is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury to consider. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'The trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gatekeeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting an Advisory Committee Note to Fed. R. Evid. 702)). As the Supreme Court explained, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II.    DISCUSSION

### A. Apportionment

Mr. Kennedy relies on the expert technical opinions of Dr. Gary Lomp and Dr. Martin Feuerstein to formulate his opinion about the reasonable royalties owed by the Defendants for their alleged infringement of the asserted patents. Dr. Lomp and Dr. Feuerstein compared the allegedly infringing features of the accused cellular network to a non-infringing alternative ("NIA") to determine the technical benefit of the allegedly infringing features. (Lomp Report at ¶ 861; Feuerstein Report at ¶ 734). However, Dr. Lomp and Dr. Feuerstein did not further apportion the technical benefit of these features to isolate the benefits attributable to the asserted patents (*See* Dkt. No. 580-3 at 214; Dkt. No. 581-15 at 146-147). Instead, and by their own admissions, their apportionments include benefits provided by other technologies or patents. (*Id.*). Mr. Kennedy then relies on the apportionment analysis from Dr. Lomp and Dr. Feuerstein in rendering his ultimate damages opinion.

In his report, Mr. Kennedy purports to perform additional apportionment to account for the contributions of carriers and smartphone manufacturers. (Kennedy Report for AT&T at ¶ 379). However, these apportionments are not tied to specific technical benefits and are instead calculated using Defendants' company-wide financial data. Such apportionments are insufficient to isolate the technical benefits attributable to the asserted patents from the technical benefits of other technologies and patents.

The Court finds that Mr. Kennedy failed to apportion damages to the value of the asserted patents. An expert may use a comparison to a non-infringing alternative as one strategy to separate the value attributable to the allegedly infringing feature. However, the expert must do more if the comparison to the NIA does not separate out the value of all other technologies that contribute to the alleged benefits.

**B. Non-infringing Activities**

The asserted claims of the '559 and '883 Patents are method claims. Plaintiffs admit that the 5G-SA network does not use the patents. (Dkt. No. 632 at 12-13). However, Mr. Kennedy's damages opinion—which is based on the benefits derived from the use of the asserted patents—includes the 5G-SA network in his royalty base for the two patents.

The Court finds that when an expert's damages model is based on the technical benefits derived from the use of certain method claims, the expert must consider the use of those asserted method claims. Here, Mr. Kennedy was aware that less than the entire 5G network was using the asserted patents, but he did not consider the non-use in his analysis. The Court finds that Mr. Kennedy's analysis is unreliable in that respect.

**C. Assumptions Underlying Densification Approach**

Mr. Kennedy makes the following assertion in his expert report: "I further understand that [Carrier] could attempt to restore that lost Throughput by deploying the same percentage amount of additional network infrastructure." (*See, e.g.*, Kennedy Report for AT&T at ¶ 274). Mr. Kennedy does not cite any support for this assertion. Mr. Kennedy is not a technical expert, and he cannot testify that the "same percentage" deployment of additional network infrastructure would restore the equivalent percentage of lost throughput. The Court finds that Mr. Kennedy's analysis is unreliable in that respect.

**D. Network Capacity**

Mr. Kennedy implies that Plaintiffs are operating their network at full capacity. (*See, e.g.*, Dkt. No. 632 at 15). However, he lacks the factual basis to testify to that fact. He can testify, however, that the carriers are constantly increasing infrastructure to support increased network traffic, which is sufficiently supported by the sources he cites.

### III.    CONCLUSION

For the reasons provided above and during the pretrial conference, the Motion is **GRANTED IN PART** and is otherwise **DENIED**.

At the pretrial conference held on July 17, 2026, the Court **GRANTED LEAVE** for the parties' experts to serve amendments to expert reports, conduct depositions, and file renewed *Daubert* motions. The Court announced the following deadlines into the record at the conclusion of the hearing:

- Plaintiffs will serve the supplemental reports of Dr. Lomp, Dr. Feuerstein, and Mr. Kennedy no later than July 24, 2026.

- Defendants may serve rebuttal reports to those supplements no later than July 31, 2026.

- Defendants may file Motions to Strike Plaintiffs' supplemental reports no later than July 29, 2026.
    - Defendants may take depositions of any of Plaintiffs' supplementing experts between the time the supplemental reports are served and the filing of Defendants' *Daubert* motions.
    - Plaintiffs' responses to any such Motions to Strike shall be filed no later than August 3, 2026.

- Likewise, Plaintiffs may file Motions to Strike Defendants' rebuttal reports no later than August 5, 2026.
    - Plaintiffs may take depositions of any of Defendants' supplementing experts between the time the supplemental reports are served and the filing of Plaintiffs' *Daubert* motions.
    - Defendants' responses to Plaintiff's Motion to Strike shall be filed no later than August 10, 2026.

The parties are expected to abide by all other instructions provided by the Court at the pretrial conference, including with respect to page limits for renewed *Daubert* motions and time limits for depositions.

**SIGNED this 18th day of July, 2026.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE