**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ASUS TECHNOLOGY LICENSING INC. *and* CELERITY IP, LLC, | § § § | |
| *Plaintiffs*, | § § | CASE NO. 2:23-CV-00486-JRG-RSP |
| v. | § § | (Lead Case) |
| AT&T ENTERPRISES, LLC, AT&T MOBILITY LLC, AT&T MOBILITY II LLC, *and* AT&T SERVICES INC., | § § § § | **FILE UNDER SEAL** |
| *Defendants*. | § § | |

**ORDER REGARDING AUGUST 3, 2026, PRETRIAL CONFERENCE**

The Court held a pretrial conference in the above-captioned lead case on August 3, 2026.

The Court heard oral arguments on *Daubert* motions filed by the parties. (*See* Dkt. Nos. 573, 574,

575, 576, 582, 583, 586, 598, 599, 604, 605, 606). The Court also addressed various pretrial topics.

This Order sets forth the Court's rulings and reasoning and provides additional instructions to the

parties as necessary.

**I.    LEGAL STANDARD**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical,

or other specialized knowledge will help the trier of fact to understand the evidence or to determine

a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

of reliable principles and methods; and (d) the expert has reliably applied the principles and

methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires trial courts to make a preliminary determination, when requested, as to

whether the requirements of the rule are satisfied regarding a particular expert's proposed

testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert*, 509 U.S. at

592–93 (1993). Such courts are given broad discretion in making Rule 702 admissibility

determinations. *Kumho Tire*, 526 U.S. at 152 ("[A] judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert's testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury to consider. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting an Advisory Committee Note to Fed. R. Evid. 702)). As the Supreme Court explained, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

2

Despite the above, however, "even if testimony is reliable, it may still be excluded if it relies on information that violates the rules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II.    DISCUSSION & RULINGS

**1. Plaintiffs' Motion to Strike Dr. Villasenor (Dkt. No. 599).**

Dr. Villasenor is a technical expert for Defendants/Intervenors. This Motion, as originally presented, had five parts. Subpart two, which discussed NIA opinions regarding the '302 Patent and '868 Patent, is now **MOOT** since those patents are no longer asserted in this case.

In subpart one, Plaintiffs seek to strike Dr. Villasenor's "if-infringed-then-essential" opinions. The Court finds that Dr. Villasenor did not provide sufficient analysis or explanation establishing that the standard could not be practiced without practicing the patents. Accordingly, the Court finds that Paragraph 945 of the opening report and Paragraph 150 of the Rebuttal Report should be **STRICKEN**.

In subpart three, Plaintiffs request the Court to strike Dr. Villasenor's opinions relying on Mr. Eric Christie, one of T-Mobile's initially-disclosed employee-expert witnesses. Defendants/Intervenors have since withdrawn disclosures of Mr. Christie as an expert and will limit his testimony to personal knowledge. Even though the declaration has been withdrawn, and even if the declaration was inadmissible, Dr. Villasenor can still rely on inadmissible evidence under Federal Rule of Evidence 703. The remainder of Plaintiffs' arguments go to the weight, and not the admissibility, of Dr. Villasenor's opinions. Accordingly, the subpart is **DENIED**.

In subpart four, Plaintiffs seek to strike certain opinions of Dr. Villasenor as untimely claim construction argument. The Court finds that Dr. Villasenor's opinions appear to be based on the

plain and ordinary meaning of the claim language, within a POSITA's understanding. Accordingly, this subpart is **DENIED**.

For the fifth subpart, Plaintiffs request the Court to strike Dr. Villasenor's opinions on license agreements that Plaintiffs contend were not properly disclosed. However, Plaintiffs do not dispute that Mr. Kennedy analyzed these agreements in his opening report. They also do not dispute that they had advance notice of these agreements. Accordingly, this subpart is **DENIED**.

**2. Plaintiffs' Motion to Strike Dr. Daniel Van der Weide (Dkt. No. 604).**

Dr. Van der Weide is one of Defendants' technical experts. The Motion by Plaintiffs, as originally presented, had seven subparts. Due to the narrowing of claims, subpart three (regarding Dr. Van der Weide's opinions relying on Mr. Shah) and subpart seven (opinions on the '059 Patent) are now moot.

For the first subpart, Plaintiffs seek to strike Dr. Van der Weide's "if-infringed-then-essential" opinions. This is identical to the companion part in Plaintiffs' *Daubert* Motion of Dr. Villasenor. The Court finds that this subpart should be **GRANTED** for the reasons described with that ruling. Accordingly, the Court strikes paragraph 546 of the opening report and paragraph 183 of the rebuttal report as conclusory.

For the second subpart, Plaintiffs seek to strike Dr. Van der Weide's NIA opinions as being undisclosed. Based on the discovery responses and on Dr. Van der Weide's report, the challenged NIAs do not appear to be new or undisclosed. Accordingly, the Court **DENIES** the subpart.

In the fourth subpart, Plaintiffs seek to strike Dr. Van der Weide's analysis of method claims. The Court finds that Plaintiffs concerns can be addressed in cross examination, and the issues identified do not create a reliability issue with Dr. Van der Weide's methodology. The Court understands Dr. Van der Weide's report to analyze how many patents declared to the standards

body include method claims, which the Court finds to be sufficiently reliable. Accordingly, the Court **DENIES** this subpart.

In the fifth subpart, Plaintiffs seek to strike Dr. Van der Weide's opinions on the VIA-LTE license. Plaintiffs argue that this is an NIA analysis, but the Court finds that this is a technical performance analysis of different technology for the purposes of establishing the comparability of a license. Dr. Van der Weide does not suggest the technology is an NIA, and Defendants suggest in sur-reply that the technology may be infringing. Accordingly, the Court finds that the subpart should be **DENIED**.

The sixth subpart of this Motion concerns Dr. Van der Weide's opinions on Plaintiffs' consideration of 3GPP value. The Court understands this portion of Dr. Van der Weide's opinions to be in rebuttal to the opinions of Dr. Lomp and Dr. Feuerstein, so the Court understands this portion of Dr. Van der Weide's opinions to be **MOOT**. To the extent the subpart is not moot, the Court finds it to be proper rebuttal opinions and therefore the subpart is **DENIED**.

**3. Plaintiffs' Motion to Strike Dr. Stephen Wicker (Dkt. No. 606).**

Dr. Wicker is another technical expert for Defendants/Intervenors. The Motion, as originally presented, had seven subparts. Subparts one, two, five, and seven are now **MOOT** because of the narrowing of the claims and defenses by the parties.

In the third subpart, Plaintiffs seek to exclude opinions about certain NIAs with respect to the '559 and '883 Patents because they were undisclosed. The Court has reviewed the discovery responses, and Defendants/Intervenors did timely disclose these NIAs. Accordingly, this subpart is **DENIED**.

The fourth subpart relates to Dr. Wicker's opinions on comparable license agreements that Plaintiffs argue were undisclosed. This issue is identical to the issue in Dr. Villasenor's *Daubert* Motion, and the Court **DENIES** the subpart for the same reasons.

In the sixth subpart, Plaintiffs seek to strike Dr. Wicker's adoption of Mr. Cason's opinions. Mr. Todd Cason is an Ericsson employee who Defendants have disclosed as a Rule 26(a)(2)(C) witness. Dr. Wicker is permitted to rely on and adopt the opinions of other experts, and Dr. Wicker properly does so here. Accordingly, the subpart is **DENIED**.

**4. Plaintiffs' Motion to Exclude Defendants' Rule 26(a)(2)(C) Disclosure for Todd Cason (Dkt. No. 598).**

Mr. Cason is offered by Defendants as a Rule 26(a)(2)(C) non-retained expert witness. Mr. Cason is an Ericsson employee with extensive experience evaluating 4G and 5G patent portfolios. Mr. Cason is offered by Defendants to provide opinions relating to more than thirteen-hundred claim charts and sixty patents of Ericsson. Mr. Cason is not separately paid, and his disclosure establishes that all, or nearly all, of his testimony is based on his personal experience at Ericsson.

This Motion has five subparts. The first asks whether Mr. Cason is qualified to be a non-retained witness under Rule 26(a)(2)(C). The Court finds that he is. Mr. Cason is not being separately paid, does not testify regularly as part of his job for Ericsson, and his testimony is based largely on his personal experience. Under the standard established in *DiSalvatore v. Foretravel*, 2016 WL 7742996 (E.D. Tex. May 20, 2016), the Court finds that Mr. Cason was properly designated.

The second subpart asks whether Mr. Cason's disclosures fail to comply with Rule 26(a)(2)(C). The Court finds that there is sufficient factual support for the opinions Mr. Cason intends to proffer, and the disclosure is thorough for the opinions included within it. Should Mr.

Cason begin to testify beyond the subject matters he disclosed, Plaintiffs should raise timely objections. The Court will hold him to the subject matter disclosed.

The third subpart asks whether Mr. Cason's opinions should be excluded under Federal Rule of Evidence 702 or *Daubert*. The Court finds that Mr. Cason is qualified to offer the opinions in his declaration, and that the opinions in his declaration are supported by the facts and data contained in the appendices to his declaration. The disclosure also details the methodology used for him to arrive at the opinions he noticed. Accordingly, the Court finds that Mr. Cason should not be stricken under Rule 702 or *Daubert*.

The fourth subpart is an attempt to exclude Dr. Wicker's opinions by Plaintiffs. That is procedurally improper under the Court's standing rules, which only permit one Motion to Strike to be filed per expert witness. The subpart is denied on procedural grounds, and the substance of Plaintiffs' concerns has been taken up in their Motion to Strike Dr. Wicker.

For the reasons described above, the Court finds that Mr. Cason should not be ordered to provide a written report under 26(a)(2)(B). Accordingly, the Court denies the relief requested by Plaintiffs under subpart five of the Motion.

In sum, the Court Orders that the Motion at Dkt. No. 598 is **DENIED** in its entirety.

**5. Plaintiffs' Motion to Strike Portions of Ms. Lauren Kindler's Report (Dkt. No. 574).**

Ms. Kindler is Defendants' damages expert, and Plaintiffs seek to strike certain of her opinions. This Motion has six sub-parts.

In the first subpart, Plaintiffs seek to strike Ms. Kindler's comparable license analysis. The Court finds that Ms. Kindler provides ample support and evidence underlying the agreements she used for her analysis. Ms. Kindler did not err in relying on Plaintiffs' own witnesses for assigning

value, and she properly relied on the knowledge of Ericsson and Nokia witnesses. Accordingly, the Court **DENIES** the relief sought by Plaintiffs in this subpart.

In the second subpart, Plaintiffs seek to strike Ms. Kindler's inclusion of allegedly non-comparable inputs. Plaintiffs incorrectly assert that licensing offers or negotiations can never be admitted. In *Whitserve v. Computer Packages Inc.*, the Federal Circuit found that proposed licenses may have some value for determining a reasonable royalty in certain situations. 694 F.3d 10, 29-30 (Fed. Cir. 2012). In *G+ Commc'ns, LLC v. Samsung Elecs. Co.*, the Court held that a patentee's consistent licensing practice indicates the terms upon which the patentee would have licensed the Defendants' use of the invention. 2024 WL 1604642, at *2 (E.D. Tex. Apr. 12, 2024). Ms. Kindler uses the licensing offers here to demonstrate a large disparity between the license proposed by Mr. Kennedy and Plaintiffs' past licensing practices. The use of a 2023 licensing presentation by Ms. Kindler is not prohibited by Federal Rule of Evidence 408, because Ms. Kindler uses the documents to show specific practices by Plaintiffs, and Defendants represent that Ms. Kindler will not use the offer amount itself. Under that representation, the use is permissible and the subpart is **DENIED**.

In the third subpart, Plaintiffs seek to strike Ms. Kindler's inclusion of Ericsson and Nokia in the hypothetical negotiation. The Court finds that Ms. Kindler could properly include the Intervenors in the hypothetical negotiation under Federal Circuit precedent. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325, 1334 (Fed. Cir. 2009) ("The hypothetical negotiation tries, as best as possible, to recreate the *ex ante* licensing negotiation scenario"). Ms. Kindler explained that the Intervenors would be consulted as part of the negotiation, and Plaintiffs' disagreement is grounds for cross examination but not exclusion. Mr. Kennedy also considers the Intervenors in some of his Georgia Pacific analysis. The Court also finds that Ms. Kindler could properly consider

the Ericsson/Nokia license based on the Federal Circuit opinion in *Finjan, Inc. v. Secure Computing Corp.*, which did not prevent the use of a non-defendant license for Georgia Pacific Factor 2. 626 F.3d 1197, 1211-12 (Fed. Cir. 2010). Mr. Kennedy also relies on Ericsson and Nokia licenses. Furthermore, the Court finds that Ms. Kindler's opinions with respect to Intervenors' patent portfolios, contributions to 3GPP, and other activity by Intervenors are all relevant, direct rebuttals to Mr. Kennedy. Ms. Kindler is **ordered** to not discuss specific non-asserted patents when discussing the patent portfolios of the Intervenors. Lastly, the Court finds that Ms. Kindler's discussion of *HTC v. Ericsson*, 407 F. Supp.3d 631, 639-40 (E.D. Tex. 2019), should be **STRICKEN** as a violation of the Court's Motion-in-limine No. 3, which precludes argument or opinions regarding either party's other litigation. The remainder of the subpart is **DENIED**.

In the fourth subpart, Plaintiffs seek to strike Ms. Kindler's analysis of Nokia's and Ericsson's offers of licenses to ASUSTeK. Plaintiffs agree that these offers are relevant to the FRAND counterclaims. However, the use of these offers should be limited to FRAND testimony, and Ms. Kindler is **ordered** to not testify to the HEVC video patents or licenses to discuss the value of the asserted patents at trial. However, this subpart is otherwise **DENIED**.

In the fifth subpart, Plaintiffs seek to strike Ms. Kindler's opinions regarding Georgia-Pacific Factor 4, familial relationships between ISL and ASUSTeK executives, and litigation financer GLS Capital. Ms. Kindler may rely on the ISL offers to potential licensees, including the royalty rates, to support her opinions about the licensor's negotiation policies and rebut arguments about holdout risk. Accordingly, the Court finds that this portion of the subpart should be **DENIED**. However, the Court **STRIKES** Ms. Kindler's opinions regarding the familial relationships between ISL and ASUSTeK executives, as well as GLS capital, under Federal Rule of Evidence 403 and Court MIL No. 12.

9

Subpart six seeks to strike Ms. Kindler's analysis that relies on documents produced after the close of discovery, at the same time Ms. Kindler served her reports. Plaintiffs do not refute that they had previous versions of the same kind of data months before the close of discovery, and that Plaintiffs explored that data in depositions. Given the nature of the equipment count and data traffic information in these documents, the Court finds that the prejudice to Plaintiffs for the late production is slight. Accordingly, the subpart is **DENIED**.

**6. Plaintiffs' Motion to Strike Portions of Prof. Genevieve Helleringer's Report (Dkt. No. 573).**

Prof. Helleringer is offered by Defendants as a French law expert. At issue in this Motion are certain opinions in her Rebuttal Report that Plaintiffs challenge.

Under Federal Rule of Civil Procedure 44.1, the determination of foreign law is a question of law to be resolved by the Court. Here, the Court finds that the contract-related claims in this litigation are governed by French law. In determining whether parties complied with, or breached, their FRAND and good-faith obligations under French law, the Court finds that the jury may consider industry norms and practices. Based on the evidence and briefing presented to the Court by the parties, the Court finds that there is a factual question about what those norms and practices are. For example, Clause 6.1 of the ETSI IPR Policy may be understood to permit either Defendants or Intervenors to be deemed the proper licensee based on specific facts related to the technology and other considerations. Accordingly, it is proper for the jury to ultimately determine, if necessary, who the proper licensee might be based on industry practices and norms.

This Motion contains five subparts. In the first subpart, Plaintiffs seek to strike certain opinions in Prof. Helleringer's rebuttal report that Plaintiffs argue should have been included in her opening report. The Court finds that Paragraphs 43-46 of Prof. Helleringer's rebuttal report establish that the challenged paragraphs 50-59 are intended as rebuttal opinions to Plaintiffs' expert

on French law, Prof. Molfessis. However, Paragraph 54 offers an affirmative opinion of what "Equipment" should mean, and that is not a rebuttal opinion. Accordingly, the Court finds that Paragraph 54 should be **STRICKEN**. The Court also finds that challenged paragraphs 90-95 are in rebuttal to opinions from Plaintiffs' experts that Defendants' failure to agree to an NDA constituted bad faith. However, the first sentence in Paragraph 96 is an affirmative opinion that Plaintiffs may be attempting to coerce the carriers. Accordingly, the first sentence of Paragraph 96 is **STRICKEN**, but the remainder of the paragraph is a proper rebuttal. The remaining challenged sentences and paragraphs in this subpart are proper rebuttal opinions, and Plaintiffs' Motion to Strike those portions of the rebuttal report is **DENIED**.

The second subpart of Plaintiffs' Motion seeks to strike Paragraph 95 in the Rebuttal Report as a conclusory opinion. The Court finds that Prof. Helleringer lays the proper foundation to rely on Mr. Peters to establish her opinion that the proper licensing partners are Nokia and Ericsson. Prof. Helleringer had previously opined in her report that a French judge would consider Defendants' expert Mr. Peters' opinions significantly given his experience in the field. Prof. Helleringer then adopts Mr. Peters' opinions. That is sufficient support for Prof. Helleringer's opinions. Furthermore, Under Federal Rule of Evidence 702, an expert may testify in the form of an opinion if the Court finds that it is more likely than not that the experts' specialized knowledge will help the trier of fact to understand the evidence or determine a fact at issue. The Court is persuaded that Prof. Helleringer's synthesis of the opinions from other experts, applying her knowledge of French law, aids the jury in understanding the evidence. The Court views this practice as akin to an infringement expert opining on the ultimate issue of infringement. Accordingly, this subpart is **DENIED**.

The third subpart of the Motion seeks to strike Prof. Helleringer's opinions contained in Paragraphs 60-62 of her Rebuttal Report. Plaintiffs argue that such opinions are conclusory opinions on the intention of the parties. The Court finds that Prof. Helleringer has no support for her opinion about "the intention of the parties at the time of the contract." While Prof. Helleringer relies on Mr. Peters for this portion of her opinion, Mr. Peters did not know the intentions of every single one of the ETSI IPR Policy Participants at the time of the contract. Accordingly, this subpart should be **GRANTED** in part. The Court understands Prof. Helleringer's opinion to be that a French judge would likely conclude that the intention of the ETSI IPR Policy participants at the time of the contract was that manufacturers of network equipment like Ericsson and Nokia are intended as beneficiaries of the FRAND obligations contained in Clause 6.1 of the ETSI IPR Policy. She will be permitted to testify as such. Plaintiffs may refute, through their own witnesses or cross examination, that all participants at the formation of the ETSI IPR Policy had that intention. However, with that understanding, the remainder of the subpart is **DENIED**.

For the fourth subpart, Plaintiffs raise similar objections to Prof. Helleringer's reliance on Mr. Melin, another expert for Defendants in this case. As with Mr. Peters, Prof. Helleringer lays the proper foundation for her reliance on Mr. Melin. Therefore, and for the reasons discussed with respect to subpart two, this subpart is also **DENIED**.

For the fifth subpart, Plaintiffs seek to strike paragraphs 94-96 of Prof. Helleringer's rebuttal report, but Plaintiffs only provide argument with respect to the first sentence of paragraph 96. That sentence was already stricken in subpart one. Since Plaintiffs do not raise any arguments that relate to the remainder of the contested paragraphs, this subpart is **DENIED**.

**7. Defendants' and Intervenors' Motion to Strike Prof. Nicolas Molfessis (Dkt. No. 586).**

Prof. Molfessis is Plaintiffs' French law expert. He has expertise in contract and tort law, but he does not have any expertise in European Competition law. He explicitly disclaimed such expertise in his deposition. However, in his Opening and Rebuttal Reports, Prof. Molfessis opines that certain conduct by Defendants/Intervenors "could" or "may" constitute violations of competition law, and that would be a relevant consideration when determining the Defendants'/Intervenors' compliance with their FRAND obligations.

Mr. Idri, who was Plaintiffs' competition law expert, was stricken as untimely. (Dkt. No. 957). European competition law is necessarily implicated, and is explicitly invoked, by the ETSI Guidelines regarding anticompetitive conduct. Therefore, Plaintiffs offer no opinion—and have no other witnesses through which such support could be offered—that Defendants'/Intervenors' conduct violated European competition law. Given the lack of support for such an opinion, inviting the jury to speculate about whether or not conduct coheres to European competition law is substantially more prejudicial than probative. Accordingly, the Court finds that Prof. Molfessis is not qualified to opine on competition law, and that his opinions stating that Defendants'/Intervenors' conduct "could" violate competition law are improper. Accordingly, the Court **STRIKES** Paragraphs 83-85 of Prof. Molfessis's opening report, and Paragraphs 8, 9, and 11 of his Rebuttal Report.

**8. Plaintiffs' Motion to Strike Defendants' Expert Mr. Craig Bishop (Dkt. No. 605).**

Mr. Bishop is being offered by the Defendants to opine on the public availability of certain documents related to 3GPP, ETSI, and ITU. The Court finds that Mr. Bishop has sufficient expertise to opine on the public availability of these documents. He has substantial experience with both 3GPP and ETSI, and his experience in the telecommunications industry is sufficient to

support his opinions on public availability for ITU documents. He detailed his methodology in confirming that these documents are publicly accessible, and his expertise in the field supports his opinion that those skilled in the art would understand that these documents are publicly accessible. Plaintiffs argue that Mr. Bishop disclaims knowledge of the U.S. patent law standard of "public availability." However, Plaintiffs do not identify why Mr. Bishop's opinion would be insufficient to establish public availability as understood under U.S. patent law, and the Court does not find that his opinions are at conflict with that body of law. Plaintiffs may use cross examination to emphasize deficiencies in Mr. Bishop's expertise or opinions, but the Court does not find his opinions to be so deficient as to warrant exclusion. Accordingly, the Motion at Dkt. No. 605 is **DENIED** in its entirety.

**9. Defendants' and Intervenors' Motion to Strike Mr. James Malackowski (Dkt. No. 582).**

Mr. Malackowski is an industry expert for Plaintiffs. His qualifications are described as a patent licensing professional familiar with the customs, practices, and standards in the patent licensing industry. He does not claim to have any expertise in French law. Throughout the vast majority of his analysis, Mr. Malackowski does not cite to Plaintiffs' expert in French law, Professor Molfessis, to provide an interpretation of FRAND as understood under French law. Instead, Mr. Malackowski cites directly to the ETSI IPR Policy.

As an initial matter, the Court finds that determining whether conduct is or is not consistent with FRAND should be done with reference to FRAND as understood under French law. Mr. Malackowski does not have the qualifications to do so, nor does he reference Prof. Molfessis in the relevant sections of his analysis Accordingly, Mr. Malackowski cannot render an ultimate opinion on whether or not a party complied with FRAND. He may, however, opine on whether

14

the conduct of a party comported with common licensing practices in the industry, which is within his expertise, including when FRAND-encumbered patents are at issue.

Furthermore, Mr. Malackowski's report repeatedly references the opinions of other individuals, witnesses, and experts, without offering any analysis of those opinions. Those quotations should not be introduced at trial unless they were used to support an opinion of Mr. Malackowski.

The Court addresses the four subparts presented in this Motion. In the first subpart, Defendants seek to strike Mr. Malackowski's subjective technical and economic perspectives and application of U.S. Patent Law to the ETSI Contract. The Court finds that Mr. Malackowski's reliance on three factors—the scope of the patented invention, the nature and scope of the license, and patent exhaustion—is permissible, because he testifies that those are standards that are used by licensing professionals. Even though those standards come from U.S. law, he has laid the foundation for their use given his opinions and expertise. The same is true for the economic and technical perspectives that Mr. Malackowski employs. However, Mr. Malackowski repeatedly opines about whether or not certain conduct is FRAND compliant. The Court directs that such opinions be **STRICKEN**, and a non-exhaustive list is provided below:

- Heading 10.1.1;

- First sentence of Paragraph 295;

- First three sentences of Paragraph 296;

- First sentence of Paragraph 299;

- Last sentence of Paragraph 305;

- All of Paragraphs 307 and 311;

- Last sentence of Paragraph 318;

- First sentence of Paragraph 371;

- First sentence of Paragraph 381; and

- Any such instances in the rebuttal report.

In the second subpart, Defendants seek to strike the repetition of attorney argument and witness testimony by Mr. Malackowski without further analysis or opinion. In the portions of his report identified below, Mr. Malackowski simply adopts a third-party's statements as his own opinions. He also sometimes opines about the consistency between his opinions and the opinions of other witnesses. These actions do not render the third party opinions admissible, and the following are a non-exhaustive list of opinions that are **STRICKEN**:

- Paragraph 248, first sentence;

- Paragraph 249, last sentence;

- Paragraph 298, full paragraph;

- Paragraph 311, full paragraph;

- Paragraph 330, full paragraph;

- Paragraph 360, first sentence;

- Paragraph 364, full paragraph and quotation;

- Paragraph 371, "delay tactics;" and

- Paragraph 164 of rebuttal report, full paragraph.

In the third subpart, Defendants seek to exclude certain opinions for being lay opinions and legal conclusions. The Court finds that Mr. Malackowski's reference to "layperson" in Paragraph 13 does not need to be stricken, because he is discussing what he understands about the technology as a layperson ***and*** a technical licensing expert. However, Mr. Malackowski does offer opinions that speculate about intent. Accordingly, the following portions of his opinions are **STRICKEN**:

16

- "Evidence shows that the wireless providers didn't have this interest in mind and engaged in what Mr. Hilyard described as 'delay tactics.'" Opening Report Paragraph 371.
  - o Malackowski can testify that the behavior was consistent with delay tactics, but he cannot say that there was an active choice to engage in delay tactics.
- "Ericsson continued to desire having cellular and HEVC portfolio licensing negotiations tied together with the purpose of being paid by ASUSTeK." Rebuttal Report Paragraph 74.
  - o To the extent Plaintiffs wish to show Ericssons interest in a cross license, it should elicit such information from fact witnesses or documents, not through the opinions of an expert on intent. Here, "desire" is a word of intent that Mr. Malackowski does not have personal knowledge of, nor a basis to opine on.

In the fourth subpart, Defendants seek to exclude Mr. Malackowski's opinions on anticompetitive practices. As previously stated, Mr. Malackowski is not a competition law expert. Additionally, Mr. Idri's report has been stricken as untimely. Therefore, Mr. Malackowski does not have a basis to opine on issues of competition law. Those opinions are **STRICKEN** from his report.

**10. Defendants' and Intervenors' Motion to Strike Mr. Robert Olesen (Dkt. No. 583).**

Mr. Olesen is Plaintiffs' expert on wireless communications standards, and he has expertise in developing and contributing to such standards. The Motion contains three subparts.

In the first subpart, Defendants/Intervenors seek to strike fact testimony that was not disclosed during fact discovery. The Court agrees that Mr. Olesen's testimony concerning his firsthand observations of disputed events in Paragraphs 15 and 17 (including the conversation between an Ericsson and a Qualcomm employee) must be **STRICKEN**. Conversations overheard in hallways are not the sort of hearsay that experts in wireless communications standards

17

reasonably rely upon. However, Mr. Olesen may testify to opinions that are based on facts arising from "his experience" or "his understanding," which is proper expert testimony (similar to the testimony offered by Mr. Peters). Accordingly, this subpart is **GRANTED** in part as described.

For the second subpart, Defendants/Intervenors seek to strike Mr. Olesen's opinions about the parties' good faith or bad faith at 3GPP. Mr. Olesen is not qualified as an expert on competition law, so he cannot opine on competition law issues. However, he is an expert on industry practice, and he may testify about his understanding of a party's conduct based on industry practices, just as Mr. Melin does. Accordingly, the Court **STRIKES** Mr. Olesen's opinions and testimony on competition laws, including to the extent they rely on Mr. Idri's now-stricken competition law analysis. The Court reminds Plaintiffs that Mr. Olesen must comply with the Order on Defendants' MIL No. 1, which precludes the use of words that have competition law connotations. The Court **DENIES** this subpart as to Mr. Olesen's ultimate opinions on good faith and bad faith, to the extent he bases his opinions on his industry experience.

The third subpart relates to Mr. Olesen's opinions on bilateral meetings. The Court finds that Mr. Olesen may properly testify about the bilateral meetings, excluding references to anticompetitive conduct. Accordingly, this subpart is otherwise **DENIED**.

## 11. Plaintiffs' Motion to Exclude Testimony of Mr. Melin (Dkt. No. 575).

Mr. Melin is an industry expert for Defendants who has experience in the SEP licensing industry, including ETSI. Mr. Melin, however, is not a French law expert, and he does not cite to Prof. Helleringer, Defendants' French law expert, in support of conclusions regarding French law. As with Mr. Malackowski, he is not permitted to testify to the ultimate opinion of whether or not a party complied with its FRAND obligations, and he may not opine on what contractual terms

18

would legally mean. However, Mr. Melin is permitted to testify what he would understand a term in the ETSI IPR Policy or license agreement to mean as a person with industry expertise.

In subpart one, Plaintiffs seek to strike Mr. Melin's opinions that they allege constitute improper contract interpretation.  The Court **STRIKES** the fourth sentence of Paragraph 188 of Mr. Melin's rebuttal report as improper contract interpretation, consistent with the Court's treatment of Mr. Malackowski.  The remainder of subpart one is **DENIED** because, as with other industry experts, Mr. Melin is properly testifying as to what was understood by ETSI and others in the industry and is providing proper rebuttal testimony.

In subpart two, Plaintiffs seek to strike Mr. Melin's opinions that they allege fall outside the scope of his expertise.  In particular, Plaintiffs allege that Mr. Melin provides opinions on the measure of damages and infringement. The Court **DENIES** this subpart of the Motion.  Contrary to Plaintiffs' assertions, Mr. Melin opines only on whether Mr. Kennedy's proposed damages amount would be consistent with industry practice, and describes the circumstances of negotiations that involved claim charts.

In subpart three, Plaintiffs seek to strike Mr. Melin's opinions based in part on his personal involvement in ETSI.  The Court finds that these opinions are not *ipse dixit*. Mr. Melin is permissibly opining based on his experience in the industry, and he expressly cites evidence supporting those opinions throughout his report.  The Court **DENIES** this subpart of the Motion.

In subpart four, Plaintiffs seek to strike certain opinions by Mr. Melin as speculative. The Court finds that Paragraph 199 contains such speculative opinions because Mr. Melin does not provide any basis for this rebuttal testimony. Accordingly, Paragraph 199 of Mr. Melin's rebuttal report is **STRICKEN**. Additionally, the last sentence of Paragraph 152 in Mr. Melin's rebuttal report suggests alternatives for what the "compensation" was "likely" based on. Mr. Melin does

not provide adequate support for these alternatives, and therefore the last sentence of Paragraph 152 in his rebuttal report is **STRICKEN**. The Court finds adequate support for the remainder of the opinions that Plaintiffs consider speculative, and the remainder of the subpart is **DENIED**.

In subpart five, Plaintiffs seek to strike Mr. Melin's opinions that they contend only "parrot" hearsay. Having reviewed the challenged paragraphs, the Court finds that Mr. Melin is not acting as a mere conduit to hearsay. The testimony and conversations in question are not relied upon in a vacuum; they properly go to support his opinions under FRE 702. This subpart of the Motion is **DENIED**.

In subpart six, Plaintiffs seek to strike Mr. Melin's opinions about the credibility and qualifications of Plaintiffs' witnesses. The Court, and not the experts nor the jury, ultimately determines whether an expert is qualified to offer an opinion on a matter. While Mr. Melin may question the methodology of Mr. Malackowski, he may not opine that Mr. Malackowski is unqualified to render the opinions he does. Accordingly, the Court **STRIKES** the last sentence of Paragraph 3, and the second sentence of Paragraph 198, of Mr. Melin's rebuttal report. The remainder of the subpart is **DENIED**.

In subpart seven, Plaintiffs seek to strike Mr. Melin's opinions relying on his personal involvement in ETSI meetings. The Court does not see a reason to strike an industry expert's testimony based on involvement in that industry. Such experts may rely on their industry experience to opine on such matters. This subpart is **DENIED**.

In subpart eight, Plaintiffs seek to strike Mr. Melin's opinions that Plaintiffs contend amount to improper contribution counting. Upon reviewing the targeted paragraphs in Mr. Melin's report, the paragraphs are used to rebut Plaintiffs' experts' opinions regarding the strength of ASUS's 3GPPP portfolio. This is appropriate rebuttal opinion. This subpart is **DENIED**.

In subpart nine, Plaintiffs seek to strike Mr. Melin's opinions regarding negotiations over non-asserted patents and opinions regarding non-comparable licenses. Plaintiffs' arguments in this subpart amount to a relevance objection. The Court finds that these opinions are relevant to the FRAND claims in this case. This subpart is **DENIED**.

In subpart ten, Plaintiffs seek to strike Mr. Melin's statement about Plaintiffs' offers during mediation. Specifically, Mr. Melin reports that Celerity has not made an offer to Defendants and intervenors, even though neither party disputes that such an offer has actually been made in mediation. Mr. Melin may not hide behind the mediation privilege while affirmatively asserting that no offer has ever been made. Accordingly, the subpart is **GRANTED**.

In the eleventh subpart, Plaintiffs seek to strike Mr. Melin's discussion of discovery disputes and other lawsuits. Court MILs 1 and 13 preclude testimony from Mr. Melin on these topics. At most, Mr. Melin may discuss previous positions Plaintiffs have taken that inform his analysis, but he may not discuss specific other litigations. With that guidance, the subpart is **GRANTED**.

In subpart twelve, Plaintiffs ask the Court to exclude Mr. Melin entirely. This subpart is premised on Plaintiffs' ongoing contention that FRAND claims are not relevant or otherwise should not be in this case. As explained in this Order and elsewhere, the Court finds Defendants' and Intervenors' FRAND claims are properly in this case. Accordingly, this subpart of the Motion is **DENIED**.

**12. Plaintiffs' Motion to Strike Mr. Ruud Peters (Dkt. No. 576).**

Mr. Peters is Defendants'/Intervenors' SEP licensing expert and a patent attorney. This Motion contains four subparts.

In the first subpart, Plaintiffs seek to strike Mr. Peters' opinions on intent. Having reviewed the targeted paragraphs, the Court finds that Mr. Peters is properly opining as an industry expert as to his understanding of the industry. The Court instructs Defendants/Intervenors that he should not opine to the specific intent of a particular participant at the ETSI IPR Policy group, but he may testify to the group's general intent as he understood it. Plaintiffs' concerns can otherwise be addressed through cross examination. With this guidance, this subpart is **DENIED**.

The Court next considers subpart two, where Plaintiffs seek to strike Mr. Peters' opinions regarding the ETSI IPR Policy as improper contract interpretation. The Court finds that Mr. Peters is not engaging in contract interpretation, and he is instead explaining the perspective of the industry as he understood it regarding ETSI obligations. As Prof. Helleringer opined, such a perspective would be considered by a French judge in determining compliance with FRAND. Accordingly, this subpart is **DENIED**.

In subpart three, Plaintiffs seek to strike Mr. Peters' damages opinions, which they characterize as incorrectly summarizing Plaintiffs' damages theory. The Court finds that Mr. Peters is not opining on damages. He is instead providing opinions based on his understanding of Mr. Kennedy's damages calculations from Ms. Kindler. Mr. Peters explains that the damages sought are contrary to how others act in the industry, which is relevant to the FRAND analysis. However, Mr. Peters should not testify regarding Mr. Kennedy's damages opinions with respect to patents no longer asserted in this case. Relying on the understanding that this will not happen, the Court **DENIES** this subpart.

In the fourth subpart, Plaintiffs seek to strike Mr. Peters' competition law opinions. Having found that all opinions with respect to competition law by Plaintiffs' experts have been stricken, and there is nothing for him to rebut, the Court finds there is no relevance for Mr. Peters' opinions

on the same subject matter. Accordingly, the subpart is **GRANTED** and Mr. Peters' opinions on competition law are **STRICKEN**.

### III.    ADDITIONAL PRETRIAL ORDERS

**1. Motions to Dismiss Intervenors' Counterclaims, and Plaintiffs' Responses.**

The Court **ORDERS** Plaintiffs to file its responses to Intervenors' Amended Answers on or before **August 5, 2026, at 9:00 a.m. C.T.** (*See* Dkt. Nos. 213, 214, 215, 216, 217, 218, 275, 276, 277, 279, 280, and 281). Any counterclaims asserted therein by Plaintiffs must be limited to those asserted in paragraphs 23 and 24 of Plaintiffs' contentions in the Joint Proposed Pretrial Order. (Dkt. No. 867). The Court is permitting the parties to introduce evidence regarding prior negotiating efforts, including the cross-license offers that arose between the parties. The Court finds that this evidence is relevant to the determination of whether the parties negotiated in good faith for licenses to the asserted patents. The Court understands Intervenors' counterclaims to be limited to such allegations and **ORDERS** Plaintiffs to only file counterclaims that are similarly limited.

The Court's Order for this issue is based on the procedural posture of this case and the particular claims and counterclaims asserted in this case.

**2. Preliminary Jury Instructions, Final Jury Instructions, Verdict Form.**

The Court has reviewed the parties' proposed instructions and verdict form, and the Court finds that it would benefit from a revised joint proposal of the preliminary jury instructions, final jury instructions, and verdict form. The Court **ORDERS** such proposals to be filed on the Docket on or before **August 10, 2026**. A courtesy copy of the documents should be emailed to the Court's staff.

The parties' proposed instructions filed on August 10 should be comprehensive. This means that even if a party contests the inclusion of certain instructions at all, that party should still provide a proposal of what the instructions should be if the Court determines that such instructions are necessary. The parties will not be afforded an opportunity to propose additional instructions for issues that have already been identified by the parties in this case.

**3. Renewed Notices of Election of Claims and Defenses.**

The Court would also benefit from renewed notices of election of claims and defenses. The Court **ORDERS** such notices to be filed on or before **August 12, 2026**.

  **SIGNED** this 3rd day of August, 2026.

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE