**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ASUS TECHNOLOGY LICENSING INC. and CELERITY IP, LLC, | § | |
| *Plaintiffs*, | § | |
| | § | CASE NO. 2:23-CV-00486-JRG-RSP |
| v. | § | |
| AT&T CORP., *et al.*, | § | |
| *Defendants*. | § | |

**MEMORANDUM ORDER**

Before the Court is Defendants' and Intervenors' Motion to Exclude the Supplemental Damages Opinions of Dr. Gary Lomp (the "Motion"). (Dkt. No. 947). The Motion is fully briefed pursuant to the Court's instructions. (*See* Dkt. No. 885). For the reasons set forth below, the Court **DENIES** the Motion.

## I. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires trial courts to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert*, 509 U.S. at 592–93 (1993). Such courts are given broad discretion in making Rule 702 admissibility

determinations. *Kumho Tire*, 526 U.S. at 152 ("a judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert's testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under Daubert is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury to consider. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'The trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gatekeeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting an Advisory Committee Note to Fed. R. Evid. 702)). As the Supreme Court explained, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II. DISCUSSION

### A. Scope of Supplemental Report

Defendants and Intervenors contend that Dr. Lomp's supplemental opinion exceeds the authorized scope of supplementation. (Dkt. No. 947 at 2). The Court previously granted leave for Dr. Lomp to supplement his technical apportionment analysis for the '559 and '883 Patents. (Dkt. No. 973 at 2). The Court recognizes that additional apportionment may require considering additional alternatives, as Dr. Lomp does. Accordingly, the Court finds that Dr. Lomp's supplemental opinion complies with the Court's directive to further apportion the 24% performance improvement based on the EN-DC feature.

### B. Reliability of '559 Opinion

Defendants and Intervenors next contend that Dr. Lomp's technical apportionment for the '559 Patent is insufficient. First, they argue that Dr. Lomp included time spent "at home" in his analysis, which they say is improper because the benefits of the patent do not accrue when a user is stationary. (Dkt. No. 947 at 2). However, Defendants and Intervenors equate "at home" with "stationary;" and while Dr. Lomp acknowledges that the benefits of the patent do not accrue when a user is stationary, (*id.*), he did not offer an opinion about the benefits of the patent when a user is "at home." (*Id.* at 3). The Court finds that this dispute about the "at home" benefits of the patent is one that goes to the credibility of Dr. Lomp's analysis. Since it is uncertain how much of the "at home" use benefits from the '559 Patent (i.e., for what percentage of the time an "at home" user is stationary), the Court considers this a factual dispute properly addressed by the jury.

Second, Defendants and Intervenors contend that Dr. Lomp incorrectly focuses on "handovers" instead of the claimed "dual-connectivity-related measurement gaps." (Dkt. No. 947 at 3). They argue that the alleged novelty of the claims is in "having the master eNB coordinate measurement gaps so two eNBs can serve the [user device] together," but considering all

handovers—as Dr. Lomp purportedly did—captures benefits known in the prior art. (*Id.*). Plaintiffs contend that Dr. Lomp has not included unclaimed measurement gaps because his opinion is based on analysis or testing that is "closely tied to" or "specifically targeted" to EN-DC. (Dkt. No. 973 at 4). The Court finds that Dr. Lomp's deposition testimony, cited by Defendants and Intervenors to support their position, does not clearly establish that Dr. Lomp has captured benefits that are not claimed by the patent. Accordingly, the Court finds that Defendants and Intervenors have not carried their burden to establish the unreliability of Dr. Lomp's apportionment in this respect.

Third, Defendants and Intervenors contend that Dr. Lomp improperly assumed that throughput loss occurs 100% of the time the user device is in a measurement gap. (Dkt. No. 947 at 3). They argue that throughput loss only occurs during a measurement gap when, simultaneously, the user device is in a measurement gap ***and*** the secondary node attempts to transmit data to the user device. (*Id.*). According to Defendants and Intervenors, Dr. Lomp did not offer support for his opinion that both conditions occur simultaneously. (*Id.* at 3-4). Plaintiffs respond that "[b]ecause the data transmission rates are held constant in both the infringing implementation and the alternative, the [transmission] rate chosen is irrelevant to the final throughput impact." (Dkt. No. 973 at 4). The Court agrees with Plaintiffs. If transmission rates are constant between the infringing implementation and the alternative, then the throughput loss that would arise for the infringing implementation and the alternative would be the same if the measurement gaps are the same (either gp0 or gp1 gaps). As a result, the expected benefits of the patent (and throughput loss) are directly correlated with the change in measurement gaps. While the Court recognizes that transmission may not occur throughout the entire measurement gap, the Court finds the correlation between measurement gap and throughput loss to be a sufficient basis for Dr. Lomp's assumption that throughput loss occurs during the entire period of the measurement

gap.[1] Defendants and Intervenors can sufficiently address any difference in throughput loss and measurement gap through cross-examination.

**C. Reliability of ’883 Opinion**

Defendants and Intervenors first contend that Dr. Lomp’s benefits for the ’883 Patent rely on non-infringing activity. (Dkt. No. 947 at 4). They argue, and Plaintiffs do not dispute, that Dr. Lomp includes the technical benefits of both secondary node initiated modification (covered by the patent) and master node initiated modification (not covered by the patent). (*Id.* at 4-5; Dkt. No. 973 at 5-6). However, Dr. Lomp opined that the non-infringing master-node initiated reconfigurations were infrequent based on his expertise, (Dkt. No. 947 at 5), and Defendants and Intervenors did not offer any evidence to rebut his expertise. Accordingly, the Court finds that they have failed to carry their burden to show that Dr. Lomp’s opinion was unreliable.

Defendants and Intervenors next argue that Dr. Lomp failed to exclude admittedly non-infringing 4G LTE handovers. (Dkt. No. 947 at 5-6). The Court finds that Dr. Lomp sufficiently apportioned the benefits of the patent relative to the EN-DC, as previously Ordered by the Court. Defendants and Intervenors may address such activity before the jury through cross-examination.

However, the Court finds that Dr. Lomp has not disclosed the calculations he performed to determine the 13-second periodicity he used in his analysis. Accordingly, the Court **ORDERS** Plaintiffs to file a sworn declaration or affidavit from Dr. Lomp, **no later than Monday, August 10, 2026, at 9:00 A.M. C.T**., disclosing his calculations and inputs.

Defendants and Intervenors assert two additional bases for finding Dr. Lomp’s technical benefits analysis unreliable for the ’883 Patent. They argue that because the Hassan paper’s data

[1] This is especially true when transmission rates are high and measurement gaps are small. Defendants and Intervenors have not established that transmission rates are low (or measurement gaps are large) frequently enough to render Dr. Lomp’s opinions unreliable.

does not include bearer-level information, Dr. Lomp cannot evaluate the technical benefits of a claim addressing the reconfiguration of bearer channels. (Dkt. No. 947 at 6). The Court finds that Dr. Lomp provides a sufficient proxy based on the data available, and that the Defendants and Intervenors could address the proxy's merits through cross-examination. (*See* Lomp Supplemental Report at Paragraph 61). They also argue that Dr. Lomp violates Rule 26(a)(1)(B) for failing to justify his selection of a new NIA. (Dkt. No. 947 at 6-7). The Court finds that Dr. Lomp identifies an NIA with sufficient specificity because he explains which claim limitation is not met by the NIA. (*See* Lomp Supplemental Report at Paragraph 58).

**D. Figures from Packet Capture**

Defendants and Intervenors raise multiple bases to exclude Dr. Lomp's packet capture analysis, including: Dr. Lomp used a Python script written by counsel, which performed routine data processing but output the throughput impact used in his report; Dr. Lomp excluded T-Mobile data, which showed much lower throughput impacts than the AT&T and Verizon data; and Dr. Lomp failed to disclose specifics of his field-testing methodology in a half-page appendix. (Dkt. No. 947 at 7). The Court finds that the use of the Python script and the exclusion of T-Mobile data can be sufficiently addressed through cross-examination.[2] The Court further finds that the disclosures for the field-testing methodology were sufficient and were not required to contain precise locations or times of day given the limited scope of the field testing done.

**E. Densification Analysis**

Defendants and Intervenors seek to exclude Dr. Lomp's densification analysis for two reasons: first, that Dr. Lomp erroneously assumes that the carriers' networks are operating at or near capacity; and second, that his ratio of infrastructure increase to throughput increase is arbitrary

[2] Additionally, Defendants and Intervenors do not offer any legal bases for exclusion in their brief.

and not tied to the accused 5G technology. (Dkt. No. 947 at 7-8). The Court finds that Dr. Lomp has provided sufficient factual support for his opinions on both the operating capacity of the networks and the ratio of infrastructure investment and throughput increase. The disagreements between Dr. Lomp and Ms. Kindler on both topics may be thoroughly explored through direct- and cross-examination before the jury.

## III. CONCLUSION

For the reasons provided above, the Motion is **DENIED**. Additionally, and as directed above, the Court **ORDERS** Plaintiffs to serve a sworn declaration or affidavit, no later than **Monday, August 10, 2026, at 9:00 A.M. C.T.**, from Dr. Lomp disclosing his calculations and inputs for determining the 13-second periodicity.

**SIGNED this 7th day of August, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE