**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ASUS TECHNOLOGY LICENSING INC. *and* CELERITY IP, LLC, | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § | CASE NO. 2:23-CV-00486-JRG-RSP |
| AT&T ENTERPRISES, LLC, AT&T MOBILITY LLC, AT&T MOBILITY II LLC, *and* AT&T SERVICES INC., | § § § § | (Lead Case) |
| *Defendants*. | § § | |

## <u>ORDER</u>

Before the Court is Defendants' and Intervenors' Motion for Summary Judgment #2: of No Infringement Under the Doctrine of Equivalents. **Dkt. No. 588**. The Motion is fully briefed. (*See* Dkt. Nos. 644, 704, 775). Defendants argue that Plaintiffs' theories under the doctrine of equivalents ("DOE") are barred by prosecution history estoppel ("PHE") and disclosure-dedication, but even if they are not, Plaintiffs have failed to prove infringement using the function-way-result test. (*Id.* at 1). For the reasons provided below, the Court **DENIES** the Motion.

## I.     LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine*

[dispute] of material fact." *Anderson*, 477 U.S. at 247–48 (emphasis added). The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## II.   DISCUSSION

Plaintiffs have elected not to proceed with U.S. Patent No. 9,237,489 ("'489 Patent"). (Dkt. No. 951 at 1). The Motion is **DENIED** as moot with respect to that patent.

The Motion remains live only as to U.S. Patent No. 9,560,559, Claims 1, 2, 7, and 8, and U.S. Patent No. 9,736,883 ("'883 Patent"), Claims 1, 2, and 4.

### A.  PHE

#### i.   '883 Patent

Defendants allege that the applicant made narrowing amendments during the prosecution history of the '883 patent, narrowing the broader term "network node" with the narrower term "evolved node B (eNB)," appearing in all asserted claims. (Dkt. No. 588 at 4) (citing '883 Pros. Hist., Dkt. No. 588-4 at *409). Plaintiffs agree. (Dkt. No. 644 at 4). Thus, the presumption of estoppel against recapturing surrendered claim scope (via DOE) applies. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002).

Defendants argue that Plaintiffs cannot rebut this presumption because "[t]he amendment was directly related to the scope of the claim term at issue." (Dkt. No. 588 at 4). Specifically, "the applicant amended the claims to exclude any type of network node that is not an 'eNB' and then argued that this amendment differentiated the claims from prior art." (*Id.*). Plaintiffs argue that the presumption "is rebutted because the rationale underlying the amendments . . . bears no more than a tangential relation" to its DOE theories (the "dual 4G/5G node and gNB equivalents"). (Dkt. No. 644 at 4) (relying on *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1331–34 (Fed. Cir. 2019)).

The parties' dispute about whether PHE bars Plaintiffs' DOE theory is confined to whether the narrowing of a "network node" to an "evolved node B (eNB)" was only tangential to the "dual 4G/5G node and gNB equivalents." *See Hospira*, 933 F.3d at 1330 (citing *Festo*, 535 U.S. at 740). Whether the tangential exception applies is a question of law based on prosecution history. *See id.* (citing *Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352, 1356 (Fed. Cir. 2013)).

The reason for the applicant's amendment was to overcome US Publication No. 2013/0303224 ("Sambhwani"). ('883 Pros. Hist., Dkt. No. 588-4 at *415). As the applicant explains, Sambhwani disclosed "S-RNC and D-RNC," which "are network nodes [that] control base stations or nodeBs," and are "distinguishable from the eNBs recited" which do not "control base stations or nodeBs." (*Id.* at *415–16). The narrowing amendment from network node to eNB, then, was made "to more accurately define what was actually invented," an improved method of handling inter-eNB connectivity in 4G/LTE networks (as disclosed through standards) as opposed to the 3G methods of Sambhwani. ('883 Patent at 2:47–64) (citing TR 36.932 v.12.0.0, RP-122033, TS 36.300 v.11.4.0, and TS 36.311 v.11.2.0); see *Hospira*, 933 F.3d at 1331. The eNB of 4G and claimed gNB equivalent in 5G, thus bears, at best, a tangential relationship to the nodeB of Sambhwani (and 3G) that the applicant narrowed its original network node term to avoid, and the *Festo* exception applies. Accordingly, this portion of the Motion is **DENIED**.

### ii.  '559 Patent

Defendants allege that the applicant narrowed the "implementing small cell enhancements," appearing in the preamble of all asserted method claims, to "supporting dual connectivity . . . wherein separate eNBs (evolved node B) are used to support dual connectivity." (Dkt. No. 588 at 4–5) (citing '559 Pros. Hist., Dkt. No. 588-3 at *16, 52, 71). Defendants argue this amendment was narrowing because it "communicated that the scope of the claims had changed

3

with respect to the 'first eNB' and 'second eNB' terms.'" (*Id.* at 5) (citing *Colibri Heart Valve LLC v. Medtronic CoreValve, LLC*, 143 F.4th 1367, 1378–79 (Fed. Cir. 2025)).

Plaintiffs dispute that the amendment was narrowing, arguing that it instead was made "to clarify the relationship between claim elements." (Dkt. No. 644 at 5). Specifically, as to addition of eNBs, Plaintiffs point out that the amendment was in response to an examiner rejection on 35 U.S.C. § 112 grounds because "[i]t [was] not clear or defined whether the claimed small cell is one of the 'first cell' or 'second cell.'" (*Id.* at 5) (citing '559 Pros. Hist., Dkt. No. 588-3 at *53, 71, 74) (relying on *Intendis GMBH v. Glenmark Pharmas. Inc.*, 822 F.3d 1355, 1365–66 (Fed. Cir. 2016)). As to the "dual connectivity" change, Plaintiffs argue the Court already rejected that PHE argument. (*Id.* at 6) (citing Claim Constr. Order, Dkt. No. 428 at 25).

Having considered the parties' arguments and the cited evidence, the Court agrees with Plaintiffs. The Court only found the preambles of Claim 7 (and thereby 8) to be limiting. (Claim Constr. Order, Dkt. No. 428 at 23). Moreover, this Court already rejected Defendants' argument with respect to the "dual connectivity" change. (*Id.* at 21) ("Defendants do not identify any definitive statements that require 'dual connectivity as a distinct, narrower limitation . . . .'"). The amendment to Claims 7 and 8 also added that the UE "is served by a first cell controlled by a first eNB." ('559 Patent at 10:13–17).

The Court agrees that this amendment is not a narrowing but a clarifying one in response to the lack of clarity referenced by the examiner. Defendants do not persuasively argue that it was intended to disclaim any subject matter, let alone the asserted dual 4G/5G nodes and gNB equivalents. *See Intendis*, 822 F.3d at 1365 (noting that the applicant "did not clearly and unmistakably disavow claim scope to distinguish prior art," but instead made "a clarifying amendment"); *cf. Colibri*, 143 F.4th at 1378 ("We conclude, accordingly, that the district court

and special master were incorrect that Colibri's asserted equivalent distinctly 'differs from what was set forth' in claim 39 such that the substance dropped when cancelling claim 39 is quite separate from the substance of retained claim 34 (issued claim 1).")). Accordingly, this portion of the Motion is **DENIED**.

## B.  Disclosure Dedication

Defendants argue that "Plaintiffs should not be allowed to unmake th[e] decision to claim only 'eNodeB' base stations despite the specification[s] [of the '559 and '883 Patents] disclosing many other types of base stations." Dkt. No. 588 at 14 (citing Claim Constr. Order, Dkt. No. 428 at 12 ("[T]he patentee chose to use a term of art, 'eNodeB,' that has a well-established meaning in 4G cellular networks . . . [b]y not defining this term more broadly, the patentee should be presumed to have used this term according to well-established meaning in the relevant art.")) (relying on *Johnson & Johnson Assocs. Inc. v. R.E. Serv. Co.*, 284 F.3d 1046, 1054 (Fed. Cir. 2002)). Specifically, Defendants argue that "Plaintiffs cannot now reclaim . . . gNBs[] which they expressly did not claim." (Dkt. No. 704 at 4) (relying on *PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004)).

Defendants' arguments make much of the specifications' disclosures of "access network (AN)" generally, which such specifications say may include "some other terminology." Defendants' theory, essentially, is that this "some other terminology" includes gNBs, which are not claimed, and are therefore dedicated to the public. This theme is further emphasized by Defendants' complaint that "[w]hat today Plaintiffs argue is 'generic description of access networks' they previously argued supported reading the claims on any base station (including gNB)." (Dkt. No. 704 at 4).

The problem with this argument, however, is that it forgets that DOE "allows patent owners to cover after-arising technology," which Plaintiffs are necessarily depending on here. *See Siemens*

5

*Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 647 F.3d 1373, 1376 (Fed. Cir. 2011) (Rader, C.J., concurring) ("In order words, 'the applicant is charged with surrender of foreseeable equivalents known before the amendment, not equivalents known after the amendment.'" (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1380 (Fed. Cir. 2007))); *see also Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320–21 (Fed. Cir. 1999) ("[A]n equivalent under [DOE] may arise after patent issuance and before the time of infringement."). Although the Court cannot evaluate foreseeability on the current briefing, it is unsurprising that the patentee did not claim 5G base nodes (gNBs), in its patents covering methods and apparatuses for improved 4G base nodes (eNBs) with priority dates well before 3GPP began studying 5G. (*See* Wicker Reb. Rep., Dkt. No. 588-6 ¶¶ 198–203) (explaining how improved 5G base stations differ substantially from 4G base stations as claimed by the '559 and '883 Patents).

Moreover, as Plaintiffs argue, (*see* Dkt. No. 644 at 12–13; Dkt. No. 775 at 4), and which analysis the Court's denial is based upon, the test for disclosure dedication is whether "one of ordinary skill in the art can understand the unclaimed disclosed teaching upon reading the written description." *Foxconn*, 335 F.3d at 1360 ("[I]f one" can do that, "the alternative matter disclosed has been dedicated to the public. This . . . rule does not mean that any generic reference in a written specification necessarily dedicates all members of that particular genus to the public. The disclosure must be of such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed."); *Pfizer, Inc. v. Teva Pharms., U.S.A., Inc.*, 429 F.3d 1364, 1379 (Fed. Cir. 2005) ("And in our view, the public notice function of patents suggests that before unclaimed subject matter is deemed to have been dedicated to the public, the unclaimed subject matter must have been identified by the patentee as an alternative to a claim limitation.").

Not only is it unfair to say that the only sentence in the specification pointed to by Defendants, (*see* Dkt. No. 588 at 13) (first citing '817 Patent at 3:32–38; and then citing ''599 Patent at 2:65–3:4) ("An access network (AN) may be a fixed station or base station used for communicating with the terminals and may also be referred to as an access point, a Node B, a base station, an enhanced base station, an eNB, or some other terminology."), serves as anything more than a "generic reference in a written specification" to other types of base stations, gNB is not even specifically identified. *See Pfizer*, 429 F.3d at 1379. Further, Defendants fail to explain how gNB is described in sufficient detail for a person having ordinary skill to recognize it. (Dkt. No. 588 at 13–14); *see Foxconn*, 335 F.3d at 1360. This evidence falls well-short of meeting the test. Accordingly, this portion of the Motion is **DENIED**.

## C.  Infringement Under DOE

Defendants first argue that Plaintiffs' DOE theory fails as a matter of law because "Dr. Lomp does not address the function of 'providing 4G/LTE cellular connectivity to the UE at any point in his application of the function-way-result test to the '4G/5G nodes' and 5G 'gNBs' that he contends are equivalent to the claimed 4G eNBs." (Dkt. No. 588 at 10) (first quoting Claim Const. Order, Dkt. No. 428 at 15, 41; and then quoting Lomp Op. Rep., Dkt. No. 588-5, ex. A ¶¶ 444–49, 642–47). Notably, the Court construed a " [first/second] eNBs," as used all asserted claims of the '559 and '883 Patents, as "an [first/second] E-UTRAN base station providing 4G/LTE cellular connectivity to the UE." (Claim Constr. Order, Dkt. No. 428 at 15, 41).

The question presented by Defendants' argument is whether an infringement theory under DOE must meet a definition of an individual term, as the Court defined it during claim construction, within a limitation for which the plaintiff is asserting an equivalent. The Court holds that it does not. By virtue of the fact that DOE allows proving infringement through showing an "equivalent for each *literally absent* claim limitation," necessarily constructions of terms within

such limitations may also be absent. *See Dawn Equip. Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1015 (Fed. Cir. 1998) (emphasis added) ("Patent infringement under [DOE] must be established on a limitation-by-limitation basis. Thus, to establish infringement . . . the accused device must be shown to include an equivalent for each literally absent claim limitation." (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("[DOE] must be applied to individual elements of the claim, not to the invention as a whole. It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."))).

Defendants then argue that "Dr. Lomp offers only a generalized analysis of functionality not stated in the claims . . . and an analysis of the claim limitations which never considers DOE." (Dkt. No. 704 at 4). Specifically, Defendants take issue with Dr. Lomp's "purported DOE analysis" for each of the patents being "nearly word-for word identical," (Dkt. No. 588 at 11–12) (citing Lomp Op. Rep., Dkt. No. 588-5, ex. A ¶¶ 46–56, 440–49, 641–47), and failing to account for "the 'first eNB' or the 'second eNB,' or the functions performed by each, treating each as though it has the same function even though they serve different roles in dual connectivity, as Dr. Wicker explained." (*id.* at 11) (citing Wicker Reb. Rep., Dkt. No. 588-6 ¶ 273).

Plaintiffs argue, and this Court agrees, that "Defendants misrepresent the[]" cited-to portions of Dr. Lomp's report "as constituting the entirety of Dr. Lomp's DOE analysis," but "he provides an extensive limitation-by-limitation analysis for the '559 and '883 Patents." (Dkt. No. 644 at 10) (citing Lomp Op. Rep., Dkt. No. 588-5, ex. A ¶¶ 648–742). Dr. Lomp explains on a limitation-by-limitation basis how the 4G/5G nodes and gNBs in Defendants' networks that he alleges are equivalent meet the function-way-result test for each claimed eNBs in each limitation (besides [1a] and [1d] of the '559 Patent, for which Plaintiffs only assert literal infringement). (*See*

8

Dkt. No. 644 at 11–12). A genuine dispute of material fact remains at least as to whether a dual 4G/5G node or a 5G gNB might satisfy the eNB limitation by including E-UTRAN 4G/LTE capabilities. That Defendants' own expert, Dr. Wicker, disagrees with Dr. Lomp, is unavailing. (See Dkt. No. 588 at 10) (citing Wicker Reb. Rep., Dkt. No. 588-6 ¶ 195). Accordingly, the Motion is **DENIED** on this ground.

### III.    CONCLUSION

For the reasons provided above, the Motion is **DENIED**.

**So ORDERED and SIGNED this 11th day of August, 2026.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

9