**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ASUS TECHNOLOGY LICENSING INC. *and* CELERITY IP, LLC,<br>*Plaintiffs*,<br>v.<br>AT&T ENTERPRISES, LLC, AT&T MOBILITY LLC, AT&T MOBILITY II LLC, *and* AT&T SERVICES INC.,<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:23-CV-00486-JRG-RSP<br>(Lead Case) |

**MEMORANDUM ORDER**

Before the Court are Plaintiffs' Motions to Exclude the Supplemental Opinions of Drs. Van der Weide, Villasenor, Wicker, Ms. Kindler, and Mr. Melin. (Dkt. Nos. 990, 991, 992, 993, 994). This Order sets forth the Court's rulings and reasoning and provides additional instructions to the parties as necessary.

## I. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires trial courts to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert*, 509 U.S. at 592–93 (1993). Such courts are given broad discretion in making Rule 702 admissibility determinations. *Kumho Tire*, 526 U.S. at 152 ("[A] judge must have considerable leeway in

deciding in a particular case how to go about determining whether particular expert's testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury to consider. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gatekeeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." (quoting the Advisory Committee Note to Fed. R. Evid. 702)). As the Supreme Court explained, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "even if testimony is reliable, it may still be excluded if it relies on information that violates the rules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II. DISCUSSION & RULINGS

**1. Plaintiffs' Motion to Strike Dr. Daniel Van der Weide (Dkt. No. 990).**

Dr. Van der Weide is one of Defendants/Intervenors' technical experts. The Motion by Plaintiffs has five subparts.

In the first subpart, Plaintiffs argue that Dr. Van der Weide offers opinions regarding non-infringement and invalidity that are outside the scope of supplementation authorized by the Court. (Dkt. No. 990 at 1-2). The Court finds that Paragraph 102 of the supplemental report is directed to a non-infringement position, which is outside the scope of supplementation. It is therefore **STRICKEN**. The Court finds that the remaining challenged paragraphs are sufficiently related to Dr. Van der Weide's analysis of technical benefits. Additionally, the Court finds that Paragraphs 112 and 122—relating to the value of the '754 Patent without other patents—is best addressed by Plaintiffs through cross examination. The Court **DENIES** the subpart in all other respects.

In the second subpart, Plaintiffs argue that Dr. Van der Weide violates Plaintiffs' MIL No. 5 by discussing the contributions of other companies—including Intervenors—to the relevant technology. (Dkt. No. 990 at 2-4). Having reviewed the challenged Paragraphs 112–21, the phrases "dozens of" in Paragraph 118 and "by my count, at least 16 total between the two companies" in Paragraph 119 are **STRICKEN**. The Court finds that these phrases directly violate Plaintiffs' MIL No. 5, which precludes testimony regarding raw counts of contributions. However, the Court finds that the remainder of the section is directed to relevant analysis of the '754 Patent's technical benefits. Accordingly, the Court **DENIES** the subpart in all other respects.

In the third subpart, Plaintiffs argue that Dr. Van der Weide violates Plaintiffs' MIL No. 2 by seeking to testify about patents that are unasserted, not elected as prior art, or drawn from comparable licenses. (Dkt. No. 990 at 4-5). Plaintiffs' MIL No. 2 precludes evidence or argument

about non-asserted patents, unless otherwise admitted by the Court during *Daubert* practice. The Court finds that the first sentence of Paragraph 123 violates Plaintiffs' MIL Nos. 2 and 5. That sentence is therefore **STRICKEN**. Additionally, the Court **ORDERS** that Dr. Van der Weide may not say that the following, discussed in Paragraphs 122–35, are Ericsson patents: U.S. Patent Nos. 10,925,076; 11,240,701; 11,470,661; 12,004,002; 12,219,647; and 9,693,267. The Court finds that it is unnecessary to identify the owner of these six patents to establish Dr. Van der Weide's position on apportionment. However, the Court finds the remainder of the section is relevant to the determination of apportionment. Accordingly, the Court **DENIES** this subpart in all other respects.

In subpart four, Plaintiffs seek to exclude Dr. Van der Weide's opinions relying on discussions with employees of Intervenors. (Dkt. No. 990 at 5-6). Under Federal Rule of Evidence 703, Dr. Van der Weide is allowed to rely upon evidence an expert in his field would reasonably rely upon in formulating his opinions, regardless of the admissibility of such underlying evidence. He may not repeat the discussions to the jury without an exception to the hearsay rule, but his opinions relying upon such discussions are not thereby improper. The Court finds that Dr. Van der Weide's reliance on these discussions with employees of Intervenors is reasonable. The Court thus **DENIES** this subpart.

In the fifth subpart, Plaintiffs seek to exclude opinions from Dr. Van der Weide that discuss alternative explanations for testing data, and reasons Dr. Van der Weide could not run his own tests. (Dkt. No. 990 at 6). Defendants represent that they do not intend to present the Court's rulings or schedule to the jury. (Dkt. No. 1032 at 8). The Court finds that Dr. Van der Weide's opinions reasonably address inconsistencies in the field testing data and therefore **DENIES** this subpart in that respect. Additionally, the Court finds that since Dr. Van der Weide will not testify to the jury about the Court's rulings or schedule, this subpart is **DENIED** to that extent as well. However, the

Court **ORDERS** that Plaintiffs should not cross-examine Dr. Van der Weide about his failure to perform his own testing in response to Plaintiffs' field testing, which was performed immediately before Dr. Mangione-Smith's report was served.

**2. Plaintiffs' Motion to Strike Dr. Villasenor (Dkt. No. 991).**

Dr. Villasenor is a technical expert for Defendants/Intervenors. This Motion has three subparts.

In the first subpart, Plaintiffs seek to exclude opinions from Dr. Villasenor that criticize Dr. Mangione-Smith's apportionment analysis for failing to exclude apportionment performed in Dr. Feuerstein's opening report (which Dr. Mangione-Smith fully adopted when substituting for Dr. Feuerstein). (Dkt. No. 991 at 1-2). The Court finds that Dr. Villasenor's criticisms are admissible, and accordingly, the subpart is **DENIED**. However, the Court **ORDERS** that neither side may reference prior rulings from the Court, pursuant to Court MIL No. 1, when eliciting testimony about discrepancies between the opening and supplemental report. The Court **FURTHER ORDERS** the parties to seek leave from the Court prior to eliciting such testimony.

In the second subpart, Plaintiffs argue that Dr. Villasenor improperly counts the contributions of other companies—including Intervenors—to the relevant technology. (Dkt. No. 991 at 2-4). Having reviewed the challenged Paragraphs 15–24, the phrase "over 90" in Paragraphs 19 and 23 is **STRICKEN** as improper contribution counting pursuant to Plaintiffs' MIL No. 5. Next, Paragraph 21 is **STRICKEN** as a violation of Plaintiffs' MIL No. 2, since it is cumulative of evidence of other contributions to the relevant specification. However, the Court finds that the remainder of the section is directed to relevant analysis of the patent's technical benefits. Accordingly, the Court **DENIES** this subpart in all other respects.

In the third subpart, Plaintiffs argue that Dr. Villasenor violates Plaintiffs' MIL No. 2 by seeking to testify about patents that are unasserted, not elected as prior art, or drawn from comparable licenses. (Dkt. No. 991 at 5-6). Plaintiffs' MIL No. 2 precludes evidence or argument about non-asserted patents, unless otherwise admitted by the Court during *Daubert* practice. The Court **ORDERS** that Dr. Villasenor may not say that the patents discussed in Paragraphs 61–85 are Intervenors' patents. The Court finds that it is unnecessary to identify the owner of these patents to establish Dr. Villasenor's position on apportionment. However, the Court finds the remainder of the section is relevant to the determination of apportionment. The Court therefore **DENIES** this subpart in all other respects.

**3. Plaintiffs' Motion to Strike Dr. Stephen Wicker (Dkt. No. 992).**

Dr. Wicker is another technical expert for Defendants/Intervenors. The Motion has two subparts.

In subpart one, Plaintiffs seek to exclude Paragraph 124 of Dr. Wicker's supplemental report as hearsay within hearsay. (Dkt. No. 992 at 1-3). Under Rule 703, Dr. Wicker may rely on evidence to support his opinions regardless of admissibility, as long as such evidence would be reasonably relied upon by an expert in the field. The Court finds that Paragraph 124 reasonably relies on such evidence. Thus, this subpart is **DENIED**.

In the second subpart, Plaintiffs argue that Dr. Wicker simply "parrots" the opinions of Mr. Cason. (Dkt. No. 992 at 3-5). Again, under Rule 703, Dr. Wicker's reliance on the testimony of other witnesses to support his opinions is permissible. Dr. Wicker does so here. The subpart is **DENIED** to that extent. Additionally, Plaintiffs argue that Dr. Wicker should not be permitted to testify about patents that are unasserted but relevant to the technological space. (Dkt. No. 992 at

4-6). The Court finds the section is relevant to the determination of apportionment. Accordingly, the Court **DENIES** this subpart in all other respects.

**4. Plaintiffs' Motion to Strike Portions of Ms. Lauren Kindler's Report (Dkt. No. 993).**

Ms. Kindler is Defendants/Intervenors' damages expert. This Motion has two subparts.

In the first subpart, Plaintiffs seek to exclude opinions from Ms. Kindler that criticize Mr. Kennedy's supplemental analysis for inconsistencies with his opening report (which the Court struck in part). (Dkt. No. 993 at 1–2). The Court finds that Ms. Kindler's criticisms are admissible. Accordingly, this subpart is **DENIED**. However, the Court **ORDERS** that neither side may reference prior rulings from the Court, pursuant to Court MIL No. 1, when eliciting testimony about discrepancies between the opening and supplemental report. The Court **FURTHER ORDERS** the parties to seek leave prior to eliciting such testimony.

In the second subpart, Plaintiffs argue that Ms. Kindler simply "parrots" the opinions of Defendants/Intervenors' technical experts. (Dkt. No. 993 at 2-3). Under Rule 703, Ms. Kindler may rely on the testimony of other witnesses to support her opinions. Ms. Kindler properly does so here. Consequently, this subpart is **DENIED**.

**5. Plaintiffs' Motion to Exclude Testimony of Mr. Melin (Dkt. No. 994).**

Mr. Melin is an industry expert for Defendants who has experience in the SEP licensing industry, including ETSI.

Plaintiffs argue that Mr. Melin's opinions in his supplemental report are impermissible royalty-stacking theories without evidentiary foundation. (Dkt. No. 994). The Court finds that Plaintiffs' arguments are waived because Plaintiffs did not raise these objections to Mr. Melin's methodology in his original report. The supplemental report uses the exact same methodology and

is a seven-page adjustment on calculations based on changes to Mr. Kennedy's damages opinion. Accordingly, the Motion is **DENIED**.

Additionally, the Court **ORDERS** that Plaintiffs may not use any testimony from Mr. Melin's deposition taken during the supplementation period regarding Mr. Melin's methodology that was disclosed in his original report. The Court also finds that Mr. Melin's methodology is sufficiently tied to the approach used by Plaintiffs in their licensing practice to be relevant to the claims of good faith and FRAND negotiations.

**SIGNED this 11th day of August, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE